**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **ERIC MACALPINE; and ANDREW GREMMO individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs**<br><br>**v.**<br><br>**ONNIT LABS, INC.,**<br><br>**Defendant.** | **Case No. 1:24-cv-00933-DII** |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
**SECOND AMENDED CLASS ACTION COMPLAINT**

Adam Bowser (VA Bar No. 76523)
Tierra S. Jones (DC Bar No. 1644196,
admitted *pro hac vice*)
ArentFox Schiff LLP
1717 K Street, N.W.
Washington, D.C. 20006
Phone: 202.857.6000
Fax: 202.857.6395
adam.bowser@afslaw.com
tierra.jones@afslaw.com

Counsel for Defendant
*Onnit Labs, Inc.*

November 12, 2024

## <u>**TABLE OF CONTENTS**</u>

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

III.  STANDARD OF REVIEW ................................................................................ 3

IV.   ARGUMENT ..................................................................................................... 4

  A.    The Complaint Fails to Allege That the Information
        at Issue Constitutes PII Under the VPPA. ................................................ 4

    1.    The Complaint Fails to Allege That Plaintiffs' Facebook Profiles
          Personally Identify Plaintiffs or Are Otherwise Publicly Accessible. ................. 5

    2.    The Complaint Fails to Allege That a Facebook ID Is PII Because the
          Allegations Focus Not on the Information Onnit Allegedly Provided, but Instead
          on The Recipient's Capabilities With Respect to the Information. ...................... 8

    3.    The Complaint Fails to Allege That an "FID" Is PII Because It Does Not
          Establish That an Ordinary Person Would Be Able to Access and Use the
          Requisite Process to Identify Plaintiffs' Meta Accounts With an FID. .............. 12

  B.    The Complaint Fails to Allege That Onnit Made Any Knowing Disclosure. ............. 14

V.    CONCLUSION ................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................4, 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................4

*Edwards v. Learfield Commc'ns, LLC*,
697 F. Supp. 3d 1297 (N.D. Fla. 2023)........................................................... *passim*

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......................................................................... *passim*

*In re Facebook Internet Tracking Litig.*,
263 F. Supp. 3d 836 (N.D. Cal. 2017), *rev'd in part sub nom. In re Facebook,
Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020)....................................15

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) ............................................................5, 6, 8

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)........................................................................................15

*Heerde v. Learfield Commc'ns, LLC*,
No. 2:23-CV-04493-FLA, 2024 WL 3573874 (C.D. Cal. July 19, 2024).......................5, 6, 8

*Mollet v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) .....................................................................................4

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016)...............................................................................8, 9, 11

*In re Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003)...........................................................................................15

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015)......................................................................4, 5

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd* 745 F. App'x 8 (9th Cir. 2018) .........16

*Smith v. Facebook, Inc.*,
745 F. App'x 8–9 (9th Cir. 2018) .............................................................................16

ii

*Smith v. Trinity Broad. of Texas, Inc. et al*,
    No. 8:24-CV-01046-JVS-ADS, 2024 WL 4394557 (C.D. Cal. Sept. 27, 2024)..................6, 8

*Solomon v. Flipps Media, Inc.*,
    No. 22CV5508JMAJMW, 2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023) ..........................6, 8

**Statutes**

18 U.S.C. § 2710.................................................................................................................... *passim*

18 U.S.C. § 2710(a)(3).................................................................................................................5, 13

18 U.S.C. § 2710(b)(1) ...............................................................................................................4, 17

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ............................................................................2, 3, 17

# I. **INTRODUCTION**

This dispute arises from three alleged Facebook users' apparent frustrations with Meta's alleged collection of metadata associated with their online activity while they were purchasing a workout video from Onnit Labs, Inc. ("Onnit").  More specifically, Plaintiffs' Second Amended Class Action Complaint is one of the most recent in a wave of complaints filed under the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA")—a 1980s law that was passed in the wake of a video tape store disclosing Judge Robert Bork's video rental history during his Senate confirmation hearings.  To address this issue, Congress passed the VPPA to prohibit "video tape service providers" from knowingly disclosing information that would allow an ordinary person to identify a particular "person as having requested or obtained specific video material or services"— such as "Judge Bork rented Sixteen Candles."

Unlike that straightforward real-life example, the current onslaught of indistinguishable VPPA cases like this one are all predicated on inscrutable metadata flows involving the cookies consumers consent to when they sign up for a Facebook account (and which they can turn off at anytime they choose), websites that use "pixels," and Meta's aggregation of various "event" data based on all of the above.  If this sounds complicated, it's because it is.  Indeed, Plaintiffs themselves—quoting the Federal Trade Commission—allege that "[m]ost consumers **cannot begin to comprehend the types** and amount of information collected by businesses."  Compl. ¶ 42 (emphasis added).

That concession, however, is fatal to Plaintiffs' attempt to stretch the VPPA well beyond its breaking point here.  None of the anonymous data flows at issue here would allow an *ordinary person* to readily ascertain that Plaintiffs purchased anything from Onnit, let alone the specific video content. Indeed, Plaintiffs do not even allege that their Facebook profiles contain personally identifiable information ("PII"), meaning that their dubious theory involving the Facebook ID

1

("FID") will always lead to this dead end. These deficiencies still present in their latest Complaint are fatal to Plaintiffs' case and respectfully require dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), as Plaintiffs continue to fail to state a claim under the VPPA.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Onnit is an Austin-based company that is focused on health and wellness.  Relevant to the operative Complaint[1] (the "Complaint"), Onnit sells fitness products through its website,[2] including prerecorded exercise programs. Compl. ¶ 64.  On May 14, 2023, November 13, 2023, and February 15, 2023, respectively, Plaintiffs Mr. Gremmo, Mr. MacAlpine and Mr. Hickerson allegedly purchased prerecorded video material from Onnit's website. *Id.* ¶¶ 10, 17, 24. To facilitate these purchases, Plaintiffs provided Onnit with their names, email addresses, billing addresses and payment information.  *Id.* ¶¶ 9, 17, 24, 66.  The Complaint alleges that, when Plaintiffs purchased videos from the website, the Meta Pixel deployed on Onnit's website disclosed *other* information back to Meta. *Id.* ¶¶ 12, 19, 27. According to the Complaint, Onnit programmed its website to include the Meta Pixel, which "systematically transmits to Meta the FID of each person with a Meta account who purchases prerecorded video material on its website, along with the specific title of the prerecorded video material that the person purchased." *Id.* ¶ 69. The Complaint further alleges that Meta assigns an FID to each Meta user's account, which is "a unique sequence of numbers linked to a specific Meta profile." *Id.*  ¶ 4. Per the Complaint, the identity of an account to which an FID corresponds can be ascertained "by simply accessing the URL www.facebook.com/[insert the person's FID here]/." *Id.*  ¶ 70.   Plaintiffs allegedly maintained

---

[1]     The Plaintiffs filed a Second Amended Complaint on October 23, 2024, which is the operative complaint in this case. (Dkt. 12, the "SAC" or "Complaint").

[2]     Onnit's website is available at https://www.onnit.com/, and is referred to herein as "the website," unless indicated otherwise.

active Meta accounts at the time they purchased prerecorded video material on Onnit's website. *Id.* ¶¶ 9, 16, 23.

On these allegations, Mr. Gremmo and Mr. MacAlpine filed this class action lawsuit on August 15, 2024, alleging that Onnit disclosed Plaintiffs' PII to Meta in violation of the VPPA. In response to Plaintiffs' First Amended Complaint,[3] Onnit filed a Motion to Dismiss, establishing, among other things, that dismissal was warranted because Mr. Gremmo and Mr. MacAlpine never alleged that their Facebook profiles personally identified them, or that they were even set as public profiles.[4] Rather than addressing these deficiencies as to Mr. Gremmo and Mr. MacAlpine, the SAC simply adds a new Plaintiff – Mr. Hickerson. *Id.* ¶ 22-29. But even as to him, the Complaint merely alleges that Mr. Hickerson's Facebook profile is public, but *not* that his profile personally identifies him.

Ultimately, Plaintiffs still do not allege that Onnit disclosed any of the information they provided to Onnit (i.e., name, email address, billing address or payment information). Rather, Plaintiffs allege that the Meta Pixel on Onnit's website disclosed their FIDs—information that the Complaint does not allege Onnit ever possessed. Specifically, the Complaint alleges that the Meta Pixel code on Onnit's website transmitted to Meta, without Plaintiffs' consent, Plaintiffs' FIDs, along with the titles of prerecorded video material that each Plaintiff purchased and the URL that shows where the videos are available to purchase. *Id.* ¶¶ 14, 21, 29.

## III. <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level."

---

[3] Dkt. No. 5.

[4] *See*, *generally*, Dkt. No. 6.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. <u>ARGUMENT</u>

Plaintiffs fail to state a claim for a violation of the VPPA. To state such a claim, Plaintiffs must adequately allege that Onnit (1) is a video tape service provider; (2) that knowingly disclosed to any person; (3) PII; (4) concerning any consumer. *See* 18 U.S.C. § 2710(b)(1); *see also Mollet v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Plaintiffs' claim fails on the second and third prongs, as the Complaint does not allege any facts to support that the information allegedly disclosed was Plaintiffs' PII—which must be information that, by itself, would allow an ordinary person to specifically identify Plaintiffs personally *and* the videos they requested. Further, the Complaint also does not plausibly allege that Onnit disclosed Plaintiffs' metadata at issue, because they never allege that Onnit was actually in possession of it. Rather, their allegations only support the conclusion that Meta collected information directly from Plaintiffs and their browser, which is precisely what one authorizes Meta to do when signing up for a Facebook account.

**A.    The Complaint Fails to Allege That the Information at Issue Constitutes PII Under the VPPA.**

Subject to other requirements and exceptions, a video tape service provider subject to the VPPA cannot "knowingly disclose[], to any person, personally identifiable information concerning any consumer of such provider." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015); 18 U.S.C. § 2710(b)(1). The VPPA states that PII "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape

service provider." 18 U.S.C. § 2710(a)(3). "[T]he information disclosed by a video tape service provider must, **at the very least, identify a particular person—not just an anonymous individual**—and connect this particular person with his or her viewing history." *Robinson*, 152 F. Supp. 3d at 179 (emphasis added).

1.      **The Complaint Fails to Allege That Plaintiffs' Facebook Profiles Personally Identify Plaintiffs or Are Otherwise Publicly Accessible.**

Plaintiffs' Complaint should be dismissed on the simple ground that their latest Complaint is still devoid of *any* facts suggesting that Plaintiffs' alleged Facebook accounts actually identify them personally, or that an "ordinary person" could in fact locate their profiles and associate them with Plaintiffs. Put differently, an FID cannot be used to identify a person unless their Facebook profile both contains *personally identifiable* information, *and* is a public profile. *See, e.g.*, *Heerde v. Learfield Commc'ns, LLC*, No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024).

The court in *Heerde* illustrated this exact point on its way to dismissing a largely identical VPPA complaint for this reason. The plaintiffs in that case were consumers who alleged that a college athletics website violated the VPPA by disclosing the plaintiffs' FIDs and video viewing information from the website to Meta. *Id.* at *1. The court held that the plaintiffs did not "allege their PII was disclosed because they [did] not identify what information on their Facebook pages, if any, **was viewable and could be used to identify them**." *Id.* at *4 (emphasis added); *see also Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023) ("[P]laintiffs' allegations are inadequate because they do not allege their Facebook pages contain any personal information, such as their names or email addresses"); *Edwards v. Learfield Commc'ns, LLC*, 697 F. Supp. 3d 1297, 1307 (N.D. Fla. 2023) (finding plaintiffs did not state a claim for VPPA violation where the complaint offered "only threadbare recitals that [the plaintiffs'] profiles included

5

personally identifiable information," and "'contain[ed] no allegation as to what information was actually included on [their] profile[s],' such as their names or birthdays.") (quoting *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 92 (S.D.N.Y. 2022) (cleaned up); *Solomon v. Flipps Media, Inc.*, No. 22CV5508JMAJMW, 2023 WL 6390055, at *3 (E.D.N.Y. Sept. 30, 2023) ("Plaintiff needed to allege that her public Facebook profile page contained identifying information about her in order to state a plausible claim. As her complaint says nothing about any personal information on her public Facebook profile page, her VPPA claim fails."); *Smith v. Trinity Broad. of Texas, Inc. et al*, No. 8:24-CV-01046-JVS-ADS, 2024 WL 4394557, at *3 (C.D. Cal. Sept. 27, 2024) (dismissing VPPA complaint because plaintiff "does not indicate that her profile is public and contains any identifying information or photos. Rather than allege what is on her personal Facebook profile, Smith merely states that the FID is PII…").

Plaintiffs' allegations here still fare no better than the plaintiffs' allegations in *Heerde*, *Ghanaat*, *Edwards*, *Solomon*, or *Smith*. The SAC continues to allege that Mr. Gremmo and Mr. MacAlpine "ha[ve] used and continue[] to use the same device to maintain and access an active Facebook account throughout the relevant period in this case." Compl. ¶¶ 9, 16.  At most, these allegations establish that Mr. Gremmo and Mr. MacAlpine had active Facebook accounts at the time of the alleged video purchase.  But what they do *not* say is that these accounts personally identified Plaintiffs, or were public.  That is, Plaintiffs could have been logged into a private account, a business Facebook account, or a proverbial "burner" account that was set up with a fake name or alias.  Simply put, there is still not a single well-pled allegation that *anyone* could locate their Facebook profiles at all, let alone that their profiles contain sufficient personally identifiable information.

And as for the newest Plaintiff, Mr. Hickerson, the *only* difference in the otherwise

6

formulaic allegations as to him is that his profile was allegedly "set to public status when he purchased the prerecorded video materials from Defendant's Website." *Id.* ¶ 26.[5] What they also do not allege as to Mr. Hickerson is that his alleged public Facebook profile contains any personally identifiable information that would allow an ordinary person to identify him specifically.

To put a finer point on it, this is not some theoretical "gotcha" argument about a few missing words in the Complaint. Rather, this is most likely an incurable defect for Plaintiffs' case,[6] as anyone with a Facebook account can search for other public Facebook user accounts, and there is simply no accessible account on Facebook for *anyone* named "Andrew Gremmo":[7]



Further, Meta allows users to control the information displayed on their profiles by, for

---

[5]    Plaintiffs' failure to similarly allege that Mr. Gremmo's and Mr. MacAlpine's profiles were public in the SAC can only lead to the inference that their profiles were *not* public.
[6]    To be clear, Onnit is not asking the Court to accept these facts as true or necessary to resolve the instant Motion. Rather, Onnit is simply illustrating the importance of Plaintiffs' *failure to plead* these essential facts against this publicly available information. That said, to the extent Plaintiffs are permitted to supplement their deficient allegations, they would of course have to do so consistent with the obligation that any factual contentions have evidentiary support.

[7]    For the avoidance of doubt, the "Andrew Gremmo Spooner" account listed here appears to belong to an individual who lives in the United Kingdom, and who may identify as a gremlin. This account does not appear to be in any way associated with Plaintiff Andrew Gremmo, who alleges he lives in Pennsylvania. Compl. ¶ 15. Similarly, the two "Eric MacAlpines" that have public profiles under that name also do not have any personal details associated with their accounts that would correspond to the allegations in the Complaint. This is also true for Mr. Hickerson, as no results for a Brian Hickerson living in Golden Valley, Arizona are returned when using Facebook's search feature. *See id.* ¶ 22.

example, adjusting privacy settings to hide certain information or blocking users from viewing or accessing their accounts at all. *See Heerde*, 2024 WL 3573874, at *4 (noting that "private profiles may not be viewable even if someone has the FID") (citing *control who can see your Facebook page*, Facebook, https://www.facebook.com/help/150193685051184/). Thus, whether Plaintiffs have accounts in different names that do not personally identify them, or their accounts are not discoverable by an "ordinary person" because they are set to private, Plaintiffs' artfully generic allegations that they had "active Facebook account[s]" is simply not sufficient to state a claim that any personally identifiable information was disclosed.

In sum, the Complaint here does not allege that someone who accesses any of the Plaintiffs' accounts using Plaintiffs' FID would discover *any* PII. And the latest Complaint still fails to allege that Mr. Gremmo's or Mr. MacAlpine's accounts are publicly accessible. These omissions alone require dismissal of Plaintiffs' VPPA Complaint, no different than in *Heerde*, *Ghanaat*, *Edwards, Solomon*, or *Smith* cited above.

2.    **The Complaint Fails to Allege That a Facebook ID Is PII Because the Allegations Focus Not on the Information Onnit Allegedly Provided, but Instead on the Recipient's Capabilities With Respect to the Information**.

Even if Plaintiffs had alleged that their Facebook profiles are public *and* in their own names, Plaintiffs' Complaint still fails to state a claim because an FID is still not personally identifiable information. That is because the VPPA's reach is limited to "the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 267 (3d Cir. 2016). In determining whether information constitutes PII, courts "look[] to what information a video service provider discloses, **not to what the recipient** of that information decides to do with it." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (emphasis added). And here, the "disclosure" on which Plaintiffs base their claim is simply a string of numbers in the form of

"**c_user=##########**."  Such metadata, on its face, is not "information that would ***readily permit an ordinary person*** to identify a specific individual's video-watching behavior." *In re Nickelodeon Consumer Privacy Litig*., 827 F.3d at 267 (emphasis added).

In *In re Nickelodeon*, the type of information at issue was plaintiff's IP address, a user's browser and operating system settings, and most importantly, *a computing device's unique device identifier. Id*. at 281-82. The court explicitly held that "the expansion of privacy laws since the Video Privacy Protection Act's passage demonstrates that, whatever else 'personally identifiable information' meant in 1988, it did not encompass" such static digital identifiers. *Id*. at 286. And unlike other statutes which "gave the FTC authority to expand the types of information that count as personally identifying under that law," "***[t]he Video Privacy Protection Act ... does not empower an administrative agency to augment the definition of 'personally identifiable information' in light of changing circumstances or new technologies***. The meaning of that phrase in the Act is, it would appear, ***more static*.**" *Id*. (emphasis added). Further, *In re Nickelodeon* explained Congress's subsequent amendment of the VPPA in 2013 demonstrates Congress "was keenly aware of how technological changes have affected the original Act" and "***[d]espite this recognition*, Congress did not update the definition of personally identifiable information in the statute.**" *Id*. (emphasis added). "What's more, it chose not to do so despite . . . submitted written testimony that" specifically argued for "the addition of Internet Protocol (IP) Addresses and ***account identifiers*** to the definition of [personally identifiable information]." *Id*. at 288 (emphasis added).

The Ninth Circuit's decision in *Eichenberger* also underscores this key point. The plaintiff in that case filed suit after downloading an ESPN channel app on his Roku device and subsequently learning that ESPN had disclosed to Adobe the serial number of his device and information

9

regarding the videos he watched.[8] *Id.* at 981. The plaintiff alleged that this disclosure violated the VPPA because Adobe used the information to identify specific consumers by connecting the information "with existing data already in Adobe's profile of th[ose] individual[s]." *Id.* The court rejected this argument, explaining that the plaintiffs improperly focused *on Adobe's* capabilities to combine various data sets, rather than determining whether the information that *ESPN provided alone* was sufficient to reveal both the person and their video viewing history. *Id.* at 985. The court reasoned that the serial number did nothing more than identify Roku users as a pool of possible video viewers, and identification of a specific user within that pool would depend on Adobe's ability to pair the serial number with separate information. *Id.*

The FIDs that Plaintiffs allege Onnit disclosed in this case are no different from the serial numbers in *Eichenberger*. Plaintiffs speculate that "any ordinary person could learn the identity of the person to whom the FID corresponds . . . by simply accessing the URL www.facebook.com/[insert the person's FID here]/." Compl., ¶ 70. But this conclusory allegation misses the mark, because just as in *Eichenberger*, that anonymous string of numbers would have to be combined with a ***separate*** database of information *not provided by Onnit*. Just as the serial numbers in *Eichenberger* only identified Roku users as a pool of individuals, an FID only identifies the pool of Meta users—but nothing more. A more precise identification of a specific Meta account

---

[8]    The *Eichenberger* decision in favor of ESPN should have been an even "closer call" than the case here because there was no dispute that ESPN was the entity disclosing the information in question, rather than the *consumer's own browser* here. 876 F.3d at 981. This makes sense because the plaintiff there alleged that he downloaded the ESPN application on a Roku device, and ESPN indisputably had access to the serial number for that Roku device that it was directly transmitting to Adobe. *Id.* Here by contrast, the Complaint does not offer any facts to support that Onnit would have access to or possession of Plaintiffs' FIDs. Even accepting Plaintiffs' allegations as true and construing all reasonable inferences in their favor, as the Court must, the Complaint makes clear that Mr. Gremmo and Mr. MacAlpine provided Onnit with nothing more than their names, email addresses, billing addresses and payment information— which is *not* the information Plaintiffs are alleging was disclosed to Meta.

within that pool would depend on Meta's technology and separate databases—Onnit's alleged disclosure is not enough alone to identify anyone. *See Eichenberger*, 876 F.3d at 985 ("It is true that today's technology may allow Adobe to identify an individual from the large pool by using **other information**—as Plaintiff alleges. But the advent of the Internet did not change the **disclosing-party focus of the statute**.") (emphasis added). The court in *Eichenberger* thus makes clear that an otherwise anonymous number assigned to a consumer is not the type of information that the VPPA protects from disclosure. *See id.* at 985 (noting that a video-store manager would not violate the VPPA by disclosing to a third party that someone within the category of "a local high school teacher" had rented a particular movie, even if the third-party recipient happened to be a resourceful private investigator who could identify the specific teacher with great efforts).

In the final analysis, a random string of numbers in an encrypted metadata stream will not permit an ordinary person to readily associate that data, by itself, with a specific individual. Simply put, no one will stop someone on the street and ask, "hey, aren't you c_user=153946839?" This Court should follow the detailed reasoning set forth by the *Nickelodeon* court, and recently adopted by the Northern District of Florida in *Edwards*, to hold that the FIDs that Plaintiffs allege were disclosed are ***not*** PII because they are merely random numeric identifiers that are automatically sent through a cookie file to a single company, just like from ESPN to Adobe. This is nothing like the purposeful and public disclosures of actual names with video viewing history to the public at large. *See Edwards*, 2023 WL 8544765, at *8. Indeed, "[t]he classic example will always be a video clerk leaking an individual customer's video rental history," and "every step away from that 1988 paradigm will make it harder for a plaintiff to make out a successful claim." *In re Nickelodeon*, 827 F.3d at 286. Plaintiffs' claims should be dismissed.

3.     **The Complaint Fails to Allege That an "FID" Is PII Because It Does Not Establish That an Ordinary Person Would Be Able to Access and Use the Requisite Process to Identify Plaintiffs' Meta Accounts With an FID.**

The Complaint also fails to allege any facts to support that an ordinary person would be able to ascertain Plaintiffs' FIDs or have knowledge of Plaintiffs' proposed process for identifying a person based on their FID.  Again, to establish a VPPA claim, Plaintiffs must allege that the disclosed information "'*readily* permit[s] an *ordinary person* to identify*" the plaintiff and her viewing habits. *Edwards*, 697 F. Supp. 3d at 1307 (emphasis added).  In other words, the Complaint must offer facts to support that an ordinary person would not have to perform "unforeseeable detective work," to access a consumer's identity using the information that the website allegedly disclosed. *Id.* at 1307–08 (quoting *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016)). For instance, the plaintiffs in *Edwards* brought a VPPA claim against a marketing company on facts similar to the instant case. *Id.* at 1301. In finding that the Complaint did not plausibly allege that the defendant disclosed the plaintiffs' PII, the court explained:

> Although Plaintiffs do allege that the . . . Website transmits metadata, which contains c_user IDs and "may" contain video titles, they offer no facts explaining how Facebook accesses that metadata, why doing so does not require technical expertise, or how much metadata Facebook has to comb through to discover someone's c_user ID and the video titles. The complaint only alleges in conclusory fashion that "[o]nce the Pixel's routine exchange of information is complete, the UID that becomes available can be used by any individual of ordinary skill and technical proficiency to easily identify a Facebook user."

*Id.* at 1307–08 (internal citations omitted).

Plaintiffs' VPPA claim fails for the same reasons that the court in *Edwards* articulated.  It is not enough for the Complaint to allege in conclusory fashion, as it surely does here, that "any ordinary person could learn the identity of the person to whom the FID corresponds . . . by *simply* accessing the URL www.facebook.com/[insert the person's FID here]/." Compl., ¶ 70 (emphasis added). Nor is it sufficient to allege generally that the Meta Pixel disclosed Plaintiffs' FIDs, the

title of the videos they purchased and corresponding URLs in the form of "various query string parameters and cookie values." *Id.* ¶¶ 13, 20, 58. Much like the complaint in *Edwards*, the Complaint in this case makes no mention of the "facts explaining how [Meta] accesses that metadata, why doing so does not require technical expertise, or how much metadata [Meta] has to comb through to discover someone's [FID] and the video titles." 697 F. Supp. 3d 1297 at 1307–08.

These omissions are similarly fatal to Plaintiffs' claim here. Indeed, as the Supreme Court instructed, the Court should employ its experience and common sense[9] to conclude that it is entirely implausible that an "ordinary person" would be (1) able to decipher a string of encrypted metadata, (2) parse out one line of code in this stream as having a "c_user=########" ID, (3) intuitively understand that this is specifically a Facebook ID, rather than some other identifier, or an identifier at all, and (4) would then also know the "simple trick" of being able to insert that string of numbers into a specific URL to find a unique Facebook profile (assuming it's not private). To be sure, that would be the exercise to simply identify the person. But the VPPA would also require tying that particular person to the "specific video materials or services" "as having [been] requested or obtained" as well. 18 U.S.C. § 2710(a)(3). And thus the detective work would need to continue.[10]

---

[9]    *See Iqbal*, 556 U.S. at 679.

[10]    Plaintiffs also conclusorily assert that this information is somehow provided to Meta as well, such as through the URLs Plaintiffs visited. Compl. ¶ 70. But it should be noted that the URL where customers check out on Onnit's website is entirely agnostic as to what the consumer is actually purchasing: https://www.onnit.com/cart/checkout. In other words, the consumer could be purchasing a kettlebell or a kettlebell video, but the URL would not indicate which one. And it should also be noted that Meta makes available to its users the specific "Off Facebook" event data that it has collected when users visit specific websites like Onnit's. *See* https://www.facebook.com/off-facebook-activity. Point being, there is no excuse for Plaintiffs'

There is therefore a reason Plaintiffs allege in an entirely conclusory fashion that an ordinary person would somehow understand how to figure this all out – because there are no facts to support this allegation.  Indeed, as noted above, Plaintiffs ironically cite to an FTC report that concludes "[*m*]*ost* consumers cannot *begin* to comprehend the types and amount of information collected by businesses."  Compl. ¶ 42 (emphasis added).  Onnit freely admits this allegation and agrees with the FTC: these data flows are *incomprehensible* to most *ordinary* people, and no conclusory allegation can change that.

Ultimately, an FID by itself is an anonymous and random number that does not permit an ordinary person to identify any individual, let alone associate it with that person's video viewing history.  Only if someone knows how to combine that information with other information possessed by third-party Meta—and not disclosed by Onnit—could someone possibly even begin to identify a separate Facebook profile.  But just as the courts held in *Eichenberger* and *Edwards*, that is a bridge too far.  Plaintiffs' Complaint should be dismissed on this independent ground.

## B.    The Complaint Fails to Allege That Onnit Made Any Knowing Disclosure.

Independently, Plaintiffs do not and cannot allege that Onnit ever had possession of their FIDs such that Onnit could *disclose* their FIDs to Meta. In fact, the Complaint makes clear that it was the Meta Pixel that collected the Plaintiffs' FIDs, not Onnit.  The Complaint alleges that "the Meta Pixel technology . . . transmits the customer's personally identifying information and detailed Private Viewing Information." Compl. ¶ 57. It further states that "a Meta Pixel . . . allows Meta to match website visitors to their respective Facebook User accounts" and that the Meta Pixel—not Onnit—transmits information from Onnit's website to Meta. Compl., ¶¶ 60, 67. Plaintiffs, however, do not and cannot allege that Onnit had the ability to access the information stored on

---

allegations to be so generic and conclusory because they should have direct access to the data Meta collected, if any, when they visited Onnit's website.

the Meta Pixel, or that Onnit ever had knowledge or possession of the FID collected by the Meta Pixel. And it should be a common sense notion that one cannot disclose what one never had.

Instead, Plaintiffs' allegations align with how cookies—such as the Facebook cookies that a Meta Pixel code relies on—generally work. A "cookie" is a small text file stored on a user's browser that "just sits on the browser and gets sent along with information that would otherwise be sent." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142 (3d Cir. 2015); *see also In re Pharmatrak, Inc.*, 329 F.3d 9, 14 (1st Cir. 2003); *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 840 (N.D. Cal. 2017), *rev'd in part sub nom. In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020). The Meta Pixels rely on FID cookies which are, as their names would suggest, Meta's cookies, placed by Meta on *a user's browser*. As Meta describes it in its Cookie Policy: "Cookies are small pieces of text used to store information on web browsers. Cookies are used to store and receive identifiers and other information on computers, phones and other devices." *See* Facebook Cookies Policy, https://www.facebook.com/policies/cookies/ (last visited October 2, 2024).[11]

Given this, when the FID cookie is installed on a user's browser (as detailed in Meta's consumer-facing policies incorporated into the Complaint), that small text file containing the user's FID is sent directly from the Meta Pixel to Meta whenever the browser communicates with Meta's server, such as when the transfer of event data is triggered by the Meta pixel as detailed above. Any information that is communicated from the cookie entirely bypasses the relevant third-party website, like www.onnit.com. When a user's event data is transmitted to Meta, Meta knows the user's FID only because it is reading that information from *its own* cookie. *See* Compl. ¶ 60,

---

[11] The Complaint cites and incorporates Meta's consumer-facing policies. *See*, *e.g.*, Compl. at 12, n. 20. The link cited in footnote 20 discusses the Meta Pixel and incorporates Meta's consumer-facing policy on "Facebook Cookies."

68 (explaining that the information allegedly disclosed consists of "cookie values"). Plaintiffs do not allege otherwise. Indeed, the Complaint expressly alleges that the Meta Pixel is communicating with Meta.

Moreover, it should also be noted that this is all part of the Plaintiffs' relationship with Meta and their consent to its data collection practices.  In *Smith v. Facebook, Inc*., 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017), *aff'd* 745 F. App'x 8 (9th Cir. 2018), the court dismissed claims related to Meta's collection of the plaintiffs' web browsing activity on several healthcare websites using Meta's Business Tools, such as the Meta Pixel at issue here. The court found that the plaintiffs' claims were barred because they had consented to Meta's receipt of such metadata when they, like every Facebook user, signed up for Facebook accounts and agreed to its Cookies Policy and Privacy Policy, which "discloses the **precise conduct at issue**." *Id.* at 953-955 (emphasis added).

On appeal, the Ninth Circuit entirely agreed with this dispositive conclusion, holding that:

> The district court properly held that Plaintiffs consented to Facebook's data tracking and collection practices. In determining consent, courts consider whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization. Plaintiffs do not dispute that their acceptance of Facebook's Terms and Policies "constitutes a valid contract." **Those Terms and Policies contain numerous disclosures related to information collection on third-party websites**, including: "We collect information when you visit or use third-party websites and apps that use our Services.... **This includes information about the websites and apps you visit**" … **A reasonable person viewing those disclosures would understand that Facebook maintains the practices of (a) collecting its users' data from third-party sites and (b) later using the data for advertising purposes.** Knowing authorization of the practice constitutes Plaintiffs' consent.

*Smith v. Facebook, Inc.*, 745 F. App'x 8–9 (9th Cir. 2018) (emphasis added). In short, one cannot sign up for a Facebook account and then (legitimately) complain when Meta collects information from their browser about their off-site Facebook activity.  Here too, this is the precise benefit of

16

the bargain Plaintiffs signed up for when they registered for a free Facebook account.[12]

Because Section 2710(b)(1) of the VPPA is only implicated if the "video tape service provider . . . knowingly discloses" otherwise protected information, Plaintiffs have independently pled themselves out of court by conceding that the Meta Pixel, not Onnit, is transferring data, if any, to Meta—which they consented to in any event.

## V. CONCLUSION

For the reasons set forth above, Onnit respectfully asks the Court to dismiss the Second Amended Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) with prejudice and without leave to amend.

Dated: November 12, 2024

Respectfully Submitted,
**ARENTFOX SCHIFF LLP**

By: _Adam Bowser_

_____

Adam Bowser (VA Bar No.76523)
Tierra S. Jones (DC Bar No. 1644196,
admitted *pro hac vice*)
ArentFox Schiff LLP
1717 K Street, N.W.
Washington, D.C. 20006
Phone: 202.857.6000
Fax: 202.857.6395
adam.bowser@afslaw.com
tierra.jones@afslaw.com

*Counsel for Defendant,*
*Onnit Labs, Inc.*

---

[12] To be clear, one can still have a free Facebook account *and* turn off, or otherwise limit, Facebook's tracking by the user adjusting their "Off-Facebook Activity" settings. Ultimately, it is the user's choice how much data they allow Facebook to access.

17

## CERTIFICATE OF SERVICE

I hereby certify that pursuant to the Federal Rules of Civil Procedure 5, this 12th day of November, 2024 I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Tyler K. Somes (DC Bar No. 90013925)
HEDIN LLP
1100 15th Street NW, Suite 04-108
Washington, D.C. 20005
Phone: 202.900.3332
Fax: 305.200.8801
tsomes@hedinllp.com

Frank S. Hedin (FL. Bar No. 109698)
Elliott O. Jackson (FL. Bar No. 1034536)
HEDIN LLP
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Phone: 305.357.2107
Fax: 305.200.8801
fhedin@hedinllp.com
ejackson@hedinllp.com

Matthew J. Langley (FL Bar No. 97331)
ALMEIDA LAW GROUP LLC
849 W. Webster Avenue
Chicago, Illinois 60614
Phone: 312.576.3024
matt@almeidalawgroup.com

_Adam Bowser_
_____
Adam Bowser

19