**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| ERIC MACALPINE; ANDREW GREMMO; and BRIAN HICKERSON individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br>    v.<br><br>ONNIT LABS, INC.,<br><br>          Defendant. | Case No. 1:24-cv-00933-DII |

**PLAINTIFFS' OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

I.    INTRODUCTION .......................................................................................1

II.    LEGAL AND FACTUAL BACKGROUND .........................................1

    A.    Video Privacy Protection Act ...................................................1

    B.    Factual Background ....................................................................2

III.    LEGAL STANDARD............................................................................4

IV.    ARGUMENT.........................................................................................4

    A.    The Complaint Alleges that Defendant Disclosed "Personally Identifiable Information" Within the Meaning of the VPPA..................5

        i.    Courts Uniformly Hold that Transmissions of Facebook IDs and URLs to Meta Constitute Disclosures of "Personally Identifiable Information"................................................................5

        ii.    The Complaint Alleges Disclosure of Personally Identifiable Information Under Both the "Ordinary Person" and "Reasonable and Foreseeable" Standards ........................................10

    B.    The Complaint Alleges Defendant Knowingly Made the Disclosures.............................................................................16

        i.    Defendant Installed the Meta Pixel on the Website Knowing and Intending that It Would Transmit Personally Identifiable Information to Meta.............................................................16

        ii.    Meta's Cookies Policy and Privacy Policy Have No Bearing on Plaintiffs' Claims.............................................................19

V.    CONCLUSION.........................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                          **Pages(s)**

*Adams v. Am.'s Test Kitchen, LP*,
  680 F. Supp. 3d 31, 43 (D. Mass. 2023) .................................................................... 17

*Aldana v. GameStop, Inc.*,
  No. 22-CV-7063-LTS, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) .......................... 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................... 4

*Belozerov v. Gannett Co.*,
  646 F.Supp.3d 310, 314 (D. Mass. 2022) ............................................................. 6, 17

*Czarnionka v. Epoch Times Ass'n, Inc.*,
  No. 22 CIV. 6348 (AKH), 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022)........ 7, 8, 17

*Edwards v. Learfield Commc'ns, LLC*,
  697 F. Supp. 3d 1297 (N.D. Fla. 2023) ......................................................................... 8

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017)................................................................................. 13, 14

*Ellis v. Cartoon Network, Inc.*,
  No. 14 Civ. 484 (TWT), 2014 WL 5023535 (N.D. Ga. Oct. 8, 2014)........................... 7

*Feldman v. Star Trib. Media Co. LLC*,
  659 F. Supp. 3d 1006 (D. Minn. 2023) ................................................................. 10, 17

*Frawley v. Nexstar Media Grp. Inc.*,
  No. 3:23-CV-2197-L, 2024 WL 3798073, (N.D. Tex. July 22, 2024) ................. 11, 17

*Ghanaat v. Numerade Labs, Inc.*,
  689 F. Supp. 3d 714 (N.D. Cal. 2023) ........................................................................... 8

*Golden v. NBCUniversal Media*,
  *LLC*, 688 F. Supp. 3d 150 (S.D.N.Y. 2023)....................................................... 5, 8, 10

*Harris v. Pub. Broad. Serv.*,
    662 F.Supp.3d 1327 (N.D. Ga. 2023) ..................................................... 6, 17

*Heerde v. Learfield Commc'ns, LLC*,
    No. 2:23-CV-04493-FLA (MAAX),
    2024 WL 3573874 (C.D. Cal. Sept. 27, 2024)......................................... 8, 19

*In re Hulu Privacy Litigation*,
    No. C 11–03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014).......... 14

*Jackson v. Fandom, Inc.*,
    No. 22-cv-04423-JST, 2023 WL 4670285 (N.D. Cal. July 20, 2023) .......... 9

*Lebakken v. WebMD, LLC*,
    640 F. Supp. 3d 1335 (N.D. Ga. 2022) ................................................. 7, 17

*Li v. Georges Media Grp. LLC*,
    No. CV 23-1117, 2023 WL 7280519 (E.D. La. Nov. 3, 2023)...................... 8

*In re Meta Pixel Healthcare Litig.*,
    647 F. Supp. 3d 778, 792 (N.D. Cal. 2022) .............................................. 20

*In re Nickelodeon Consumer Privacy Litigation*,
    827 F.3d 262, 284 (3d Cir. 2016)............................................................. 13

*Robinson v. Disney Online*,
    152 F. Supp. 3d 176 (S.D.N.Y. 2015).......................................... 7, 12, 13

*Smith v. Facebook, Inc.*,
    262 F. Supp. 3d 943 (N.D. Cal. 2017) ..................................................... 20

*Smith v. Trinity Broad. of Texas, Inc. et al*,
    No. 8:24-CV-01046-JVS-ADS, 2024 WL 4394557 (C.D. Cal. Sept. 27, 2024) ........... 9

*Solomon v. Flipps Media, Inc.*,
    No. 22CV5508JMAJMW, 2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023) ................. 9

*Spivey v. Robertson*,
    197 F.3d 772 (5th Cir. 1999).......................................................... 4, 15, 19

*St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co.*,
    937 F.2d 274 (5th Cir. 1991)................................................................... 16

*Mollett v. Netflix, Inc.*,
    795 F.3d 1062 (9th Cir. 2015) ........................................................................4

*United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*,
    727 F.3d 343 (5th Cir. 2013) .........................................................................4

*Yershov v. Gannett Satellite Info. Network, Inc.*,
    820 F.3d 482 (1st Cir. 2016) ........................................................................11

**Statutes**

18 U.S.C. § 2710, *et. seq.* ....................................................................... 1, 2, 6

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .............................................. 4, 15, 19

# I.  <u>INTRODUCTION</u>

This case is about Defendant Onnit Labs, Inc.'s ("Defendant") systematic and routine violation of consumers' privacy rights as established by the Video Privacy Protection Act, 18 U.S. Code § 2710 ("VPPA").  Over the past two years, Defendant regularly disclosed its consumers' "personally identifiable information" to Meta Platforms, Inc. ("Meta").  *See* 18 U.S.C. § 2710(b)(1).  This personally identifiable information includes both the consumers' Facebook IDs and URLs identifying and containing the names of the videos they "requested or obtained" from Defendant.  *See* 18 U.S.C. § 2710(a)(3).  The allegations presented in the Second Amended Complaint (the "Complaint") state a claim under the VPPA, as Eric MacAlpine ("Plaintiff MacAlpine"), Andrew Gremmo ("Plaintiff Gremmo"), and Brian Hickerson ("Plaintiff Hickerson") (collectively, "Plaintiffs"), more fully explain below.[1]

# II. <u>LEGAL AND FACTUAL BACKGROUND</u>

Plaintiffs bring this cause of action to remedy Defendant's violations of its consumers' privacy rights as established by the VPPA.

## A.    **The Video Privacy Protection Act**

The United States Congress passed the VPPA in 1988.  President Ronald Reagan signed the legislation into law that same year.  It is designed to protect the privacy interests of consumers who request or obtain video materials from commercial providers of such services.

---

[1] Plaintiffs filed a Second Amended Complaint with Defendant's written consent under Federal Rule of Civil Procedure 15(a)(2) on October 23, 2024.  ECF No. 12.  The Second Amended Complaint added Plaintiff Hickerson as a party.  However, the caption on Defendant's motion to dismiss reflects only the original two Plaintiffs, Plaintiff Gremmo and Plaintiff MacAlpine, and omits Plaintiff Hickerson, who is properly a party to this action.  *See* ECF No. 14 & 14-1.

The VPPA defines a "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). It defines "personally identifiable information" as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). It defines a "video tape service provider," in relevant part, as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials. . . ." 18 U.S.C. § 2710(a)(4).

The VPPA provides that a "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided [below]." 18 U.S.C. § 2710(b). Several exceptions to violations of the law are also enumerated, none which are raised by Defendant's briefing currently before this Court.

Sub-section (c) states that consumers may enforce the substantive privacy right through civil litigation. 18 U.S.C. § 2710(c)(1). The remedies available to consumers include statutory damages of $,2,500 per violation, punitive damages, attorneys' fees and litigation costs, and equitable relief. 18 U.S.C. § 2710(2)(A)-(D).

### B.    Factual Background

Plaintiffs' Complaint alleges that Defendant is a "video tape service provider." ECF No. 12, ¶ 30, 84. It details how Defendant operates the website www.onnit.com where it "sells prerecorded video materials to consumers." *Id.* at ¶ 64; *see also id.* at ¶¶ 1, 3, 9, 12, 17, 19, 24, 27, 65-67. The Complaint states that "[t]hese video materials include 'Digital &

Online Streaming Products' such as 'On-Demand Workouts.'" *Id*. at ¶ 64. A screenshot shows several videos in this category priced at $49.95 on Defendant's website. *Id*. "Defendant also sells prerecorded instructional videos on 'Home Fitness Programs.'" *Id*. at ¶ 65. As an example, a screenshot shows the "Onnit 6 Steel Mace" video program, also priced at $49.95, which depicts a man crouching barefoot in a river and wielding a steel mace. *Id*.

The Complaint further alleges that Defendant disclosed Plaintiffs' and its other consumers' "personally identifiable information." ECF No. 12, ¶ 86. It states that each of the Plaintiffs and putative class members have Facebook accounts. *Id*. at ¶¶ 9-14, 16-21, 23-29, 76. With respect to Plaintiff Hickerson in particular, it alleges that his Facebook account was set to public when he purchases the prerecorded video materials. *Id*. at ¶ 26. It explains how each person with a Facebook account is assigned a unique, numerical Facebook ID by Meta. *Id*. at ¶¶ 3, 4, 50. These Facebook IDs are personally identifying, according to the Complaint, because they are each indexed to an individual's Facebook account, which includes the individual's name and other personally identifying information. *Id*. at ¶ 60 (explaining how possessing an FID "allows anyone to look up the user's unique Meta profile and thus identify the user by name"). When a person with a Facebook account accesses Defendant's website, the website sends the person's Facebook ID to Meta along with other information about the individual's activity on the page, including the page's URL, which contains the title of the video, and other information identifying the video on the page. *Id*. at ¶¶ 57, 64-75, 86.

The Complaint alleges that Defendant knowingly installed the Meta Pixel and used it to disclose to Meta its consumers' Facebook IDs and the names of the videos those consumers requested or obtained. ECF No. 12 at ¶¶ 1, 2, 57, 64-75, 75, 87. None of the VPPA's exceptions apply to Defendant's conduct. ECF No. 12 at ¶ 34.

### III. LEGAL STANDARD

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "accept all well pleaded facts as true, viewing them in the light most favorable to the plaintiff." *United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 346 (5th Cir. 2013) (internal quotations and citations omitted). A court may not look beyond the pleadings when deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive dismissal, a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### IV. ARGUMENT

A "plausible claim" under the VPPA requires a plaintiff to allege that (1) the defendant is a "video tape service provider," (2) the defendant disclosed "personally identifiable information concerning any customer" to "any person," (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by the statutory exceptions. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Plaintiffs have plausibly stated a claim

for a violation of the VPPA by pleading facts which, taken as true, establish each element of an offense.

Defendant centers its argument on the second and third elements of a VPPA claim. First, it argues that the Complaint fails to allege that "the information at issue constitutes [personally identifiable information] under the VPPA." ECF No. 14-1, 4. Second, it argues that the Complaint fails to allege that Defendant "made any knowing disclosure." *Id*. at 14. These assertions run plainly contrary to the allegations in the Complaint and well-established case law applied to substantially similar allegations by courts across the country, including in this District.

**I.      The Complaint Alleges that Defendant Disclosed "Personally Identifiable Information" Within the Meaning of the VPPA**

As courts have overwhelmingly recognized, allegations that a defendant transmitted Facebook IDs and URLs identifying or naming prerecorded videos requested or obtained by consumers satisfy the pleading standard for "personally identifiable information" within the meaning of the VPPA. *See Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 159 (S.D.N.Y. 2023).

**A.      Courts Uniformly Hold that Transmissions of Facebook IDs and URLs to Meta Constitute Disclosures of "Personally Identifiable Information"**

Courts have consistently held that Facebook IDs disclosed to Meta in combination with the URLs or names of videos requested or obtained by consumers constitute "personally identifiable information" under the VPPA. Defendant does not cite a single case indicating otherwise. *See* ECF No. 14-1. On the contrary, Defendant repeatedly emphasizes authorities

which themselves support Plaintiffs' position that Defendant disclosed personally identifiable information. *See id*.

The VPPA defines "personally identifiable information" as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). In this case, the Complaint alleges that Defendant disclosed to Meta the Facebook IDs of visitors to its website, and that its disclosure of those Facebook IDs was paired with the URLs of the webpages where consumers watched or purchased prerecorded videos from Defendant. ECF No. 12, ¶¶ 57-75. As alleged in the Complaint, the URLs identify and contain the names of the videos requested or obtained by consumers. *Id*. at ¶¶ 14, 21, 29, 65 n.25, 67, 68, 71. Facebook IDs are personally identifying to Meta because they are indexed to an individual's Meta account, which includes the individual's first and last name, birth date, gender, and phone number or email address. *Id*. at ¶ 58. To the wider public, Facebook IDs are personally identifying because anyone in possession of a Facebook ID can use it to identify a person's Facebook account, which displays their name and other identifying information. *See, e.g.*, *id*. at ¶¶ 4, 60.

Courts have held that substantially similar disclosures sufficiently allege "personally identifiable information" within the meaning of the VPPA. *See, e.g.*, *Harris v. Pub. Broad. Serv.*, 662 F.Supp.3d 1327, 1334 (N.D. Ga. 2023) (holding that the "bundling of the [Facebook ID] from the c_user cookie with the URLs of the videos Plaintiff watched" satisfies the disclosure element); *Belozerov v. Gannett Co.*, 646 F.Supp.3d 310, 314 (D. Mass. 2022) (finding a Facebook ID meets the definition of personally identifiable

information) (collecting cases); *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1342 (N.D. Ga. 2022) ("[Plaintiff] adequately alleged that [defendant] disclosed her Facebook ID and email address in connection with her video viewing information to Facebook and that the disclosure of such information constituted a disclosure of PII."); *Ellis v. Cartoon Network, Inc.*, No. 14 Civ. 484 (TWT), 2014 WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014) (same), *aff'd on other grounds*, 803 F.3d 1251 (11th Cir. 2015). In fact, several decisions cited by Defendant support the argument that such allegations state a disclosure of personally identifiable information. For example, Defendant cites *Robinson v. Disney Online* in the opening paragraph of its argument on this element. *See* ECF No. 14-1 (citing 152 F. Supp. 3d 176, 183 (S.D.N.Y. 2015)). In holding that the "anonymized Roku serial number at issue" did not "identify a specific person" the Court in *Robinson* recognized that an individual's Facebook ID *was* personally identifiable:

> Nor is the information disclosed by Disney equivalent to a Facebook ID. A Facebook user—even one using a nickname—generally is an identified person on a social network platform. A Facebook ID . . . is thus equivalent to a name—it stands in for a specific person, unlike a device identifier.

*Robinson*, 152 F. Supp. at 183. (internal quotations and citations omitted); *see also Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022) (noting *Robinson*'s distinction between Facebook IDs and anonymized Roku serial numbers and denying a VPPA defendant's motion to dismiss where the plaintiff alleged disclosure of Facebook IDs).

As *Robinson* suggests, courts have overwhelmingly held that Facebook IDs and the URLs of websites identifying videos requested or obtained by consumers constitute personally identifiable information. The Southern District of New York recently summarized

the jurisprudential landscape on this subject, writing that "Courts have *uniformly* held Facebook IDs to constitute PII under the VPPA, particularly where—as here—the plaintiff alleges that her Facebook ID was disclosed alongside the viewed video's URL and name." *Golden*, 688 F. Supp. 3d at 159 (emphasis added) (collecting cases).  In *Li v. Georges Media Grp. LLC*, the court stated "many courts have found that FIDs constitute PII under the statute. At the very least, Meta can easily 'link' the FID to a specific user."  No. CV 23-1117, 2023 WL 7280519, at *4 (E.D. La. Nov. 3, 2023) (internal citations omitted) (denying defendant's motion to dismiss).  In *Czarnionka v. Epoch Times Association, Inc.*, the court found that "[t]he FID itself represents a particular individual."  2022 WL 17069810 at *3 (denying defendant's motion to dismiss).  Each of these authorities collects numerous others reaching the same conclusion.

Defendant relies on inapposite decisions where complaints were dismissed for technical pleading deficiencies, namely failures to allege that the plaintiffs' Facebook accounts contained their names.  *See* ECF No. 14-1, 6 (citing *Heerde v. Learfield Commc'ns, LLC*, No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874 ("Plaintiffs fail to allege their PII was disclosed because they do not identify what information on their Facebook pages, if any, was viewable and could be used to identify them."); *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023) ("[P]laintiffs' allegations are inadequate because they do not allege their Facebook pages contain any personal information, such as their names or email addresses"); *Edwards v. Learfield Commc'ns, LLC*, 697 F. Supp. 3d 1297, 1307 (N.D. Fla. 2023) (granting a motion to dismiss where the complaint "contain[ed] no allegation as to what information was actually included on [their] [Facebook] profile[s], such

as their names or birthdays."); *Solomon v. Flipps Media, Inc.*, No. 22CV5508JMAJMW, 2023 WL 6390055, at *3 (E.D.N.Y. Sept. 30, 2023) ("Plaintiff needed to allege that her public Facebook profile page contained identifying information about her in order to state a plausible claim."); *Smith v. Trinity Broad. of Texas, Inc. et al*, No. 8:24-CV-01046-JVS-ADS, 2024 WL 4394557, at *3 (C.D. Cal. Sept. 27, 2024) (dismissing VPPA complaint because plaintiff did not indicate that her Facebook profile contained "any identifying information or photos.").

Plaintiffs' Complaint allegations are almost identical to those in *Jackson v. Fandom, Inc.*, which the *Heerde* court cited having adequately pled the disclosure of a Facebook ID was personally identifiable information.  No. 22-cv-04423-JST, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023) (finding personally identifiable information alleged where the plaintiff claimed that "a user's Facebook profile may contain the user's name, gender, birthday, place of residence, career, educational history, a multitude of photos, and the content of a Facebook user's posts."); *see Heerde,* 2024 WL 3573874 at *4.  Here, the Complaint states: "A Meta profile . . . identifies by name the specific person to whom the profile belongs (and also contains other personally identifying information about the person)." ECF No. 12, ¶ 4.  It alleges that a Facebook ID "identifies a person more precisely than a name, as numerous persons may share the same name, but each person's Facebook profile (and associated FID) uniquely identifies one and only one person."  *Id*.  It further alleges that in order to create a Meta account (and obtain a corresponding Facebook ID), an individual needs to provide Meta their name, birthday, name, and phone number or email address.  *Id*. at ¶ 58  Finally, the Complaint ties those allegations to the Plaintiffs by alleging

that they had accounts with Meta, profiles on Meta's internet properties, and Facebook IDs associated with those profiles, including one Plaintiff whose account is specifically alleged to have been set to public status when he purchases the prerecorded videos from Defendant. *Id*. at ¶¶ 9-14, 16-21, 23-29; *see also Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1020–21 (D. Minn. 2023) (finding that a plaintiff plausibly alleged his personally identifiable information was disclosed via the Meta Pixel when he alleged that his Facebook profile contained his name, "making it feasible to identify [him] by reference to this information.").

As courts have "uniformly" held in similar cases, the allegations in the Complaint allege that Plaintiffs' Facebook IDs and the URLs of the video materials they requested or obtained from Defendant constitute personally identifiable information within the meaning of the VPPA. *See Golden*, 688 F. Supp. 3d at 159.

## B.    The Complaint Alleges Disclosure of Personally Identifiable Information Under Both the "Ordinary Person" and "Reasonable and Foreseeable" Standards

Defendant attempts to evade liability under the VPPA by asserting that its disclosure of Plaintiff's PII should be ignored because, though the party to whom it disclosed the PII – Meta – is able to personally identify Plaintiffs through this disclosure, an "ordinary person" other than Meta would not be able to do so.  *See* ECF No. 14-1, 12-14.  However, this "ordinary person" standard has *not* been adopted by the Fifth Circuit and, even if it had been, Plaintiffs' Complaint, specifically alleges that an ordinary person could determine Plaintiffs' identities with access to their Facebook IDs.  *See* ECF No. 12, ¶ 70.  Under either standard,

Plaintiffs' have sufficiently alleged that the information disclosed by Defendant was personally identifiable under the VPPA.

To begin, federal courts, including in this Circuit, have consistently held that Facebook IDs are personally identifying. For example, in *Frawley v. Nexstar Media Grp. Inc.*, Magistrate Judge Horan recently wrote:

> While there is not a uniform definition of what qualifies as personally identifiable information, "the majority of the courts to address this issue" have found PII to mean "the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior."

No. 3:23-CV-2197-L, 2024 WL 3798073, at *8 (N.D. Tex. July 22, 2024), *report and recommendation adopted*, No. 3:23-CV-2197-L, 2024 WL 3807700 (N.D. Tex. Aug. 13, 2024). He then specifically recommended holding that 'that providing a third party with PII that is legible to that specific third party is sufficient to state a claim under the VPPA.'" *Id.* (quoting *Aldana v. GameStop, Inc.*, No. 22-CV-7063-LTS, 2024 WL 708589, at *9 (S.D.N.Y. Feb. 21, 2024)). Judge Lindsay adopted Magistrate Judge Horan's recommendation holding that Facebook IDs constitute PII under the VPPA. *See id.*

This Court need not endorse or apply the "ordinary person" standard. That standard has not been adopted by the Fifth Circuit nor any other binding authority. The First Circuit has articulated a different test which is consistent with the language of the VPPA, the Congressional aims underlying it, and the approach taken by the Northern District of Texas in *Frawley*. *See Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016). In *Yershov*, the First Circuit (with retired Justice Souter sitting by designation) held that the term "personally identifiable information" encompasses "information *reasonably and foreseeably* likely to reveal which . . . videos [a person] has obtained." *Id.* (emphasis

added).  It noted that the phrase "personally identifiable information" is "awkward and unclear" and that its statutory definition "adds little clarity beyond training our focus on the question [of] whether the information identifies the person who obtained the video."  *Id*. Nevertheless, it wrote, "the language reasonably conveys the point that [personally identifiable information] is not limited to information that explicitly names a person," and it gave a succinct and persuasive reading of the term's broader scope through textual analysis, legislative history, and colloquial sports analogies.  *Id*.

The First Circuit's approach permits more consideration of the receiving party's ability to link the disclosed information to an individual's identity.  *Id*.  Expanding on an earlier analogy concerning the numbers on football players' jerseys, the court wrote that "when Gannett makes such a disclosure to Adobe, it knows that Adobe has the 'game program,' so to speak, allowing it to link the GPS address and device identifier information to a certain person by name, address, phone number, and more."  *See also Robinson*, 152 F. Supp. 3d 176 (S.D.N.Y. 2015) (stating that allegations of a "correlated look-up table" that would "enable Adobe to link the hashed serial number of [the plaintiff's] Roku device and his viewing choices to his identity" would satisfy the personally identifiable information pleading standard.).  Consistent with this approach, Plaintiffs have alleged Meta's ability to easily link Facebook IDs to individual identities, as well as Defendant's knowledge thereof. *See, e.g.*, ECF No. 5, ¶ 3 ("[t]o create a Meta account, a person must provide, *inter alia*, his or her first and last name, birth date, gender, and phone number or email address."); ¶ 51 (quoting Meta's developer guide as stating that "a Meta Pixel installed on a company's website allows Meta to 'match [] website visitors to their respective Facebook User

accounts.'"); ¶ 59 ("Defendant intentionally programmed its Website to include the Meta Pixel code in order to take advantage of the targeted advertising and other informational and analytical services offered by Meta."); *see also Li*, 2023 WL 7280519, at *4 ("many courts have found that FIDs constitute PII under the statute. At the very least, Meta can easily 'link' the FID to a specific user.").

But even if this Court does adopt the "ordinary person" test, Defendant's argument still fails because Plaintiffs sufficiently allege that the disclosure of their Facebook IDs and the urls containing the video titles would readily permit an ordinary person to identify them and the videos they requested or obtained.

The "ordinary person" test assumes that the VPPA views disclosure from the perspective of the disclosing party, rather than the receiving party. The Third Circuit first adopted the standard in *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 284 (3d Cir. 2016). In that case, the court held that a unique IP address does not qualify as "personally identifiable information." The court reasoned that the statutory term includes only information that "readily permit[s] *an ordinary person* to identify a [particular individual as having requested or obtained certain videos]." *Id.* (emphasis in original). The Ninth Circuit also adopted the "ordinary person" standard in *Eichenberger v. ESPN, Inc.*, where it held, consistent with the *Robinson* court, that a Roku device's serial number was not personally identifying. 876 F.3d 979, 985 (9th Cir. 2017).

Neither *Nickelodean* nor *Eichenberger* involved disclosures of Facebook IDs. On the contrary, both decisions expressly indicated that Facebook IDs are personally identifying. In *Nickelodeon* the Third Circuit wrote "We note, however, that even a numeric identifier might

qualify as personally identifiable information, at least in certain circumstances." 827 F.3d at 289 n.174. It proceeded to a discussion of *In re Hulu Privacy Litigation* and its holding that Facebook IDs are personally identifying, using that as an example of a circumstance where numeric identifiers would meet the statutory definition. *Id.* (citing No. C 11–03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014)) ("Hulu would transmit that coded information to Facebook . . . in such a way that Facebook could easily identify an account holder's video preferences."). Similarly, in *Eichenberger*, the Ninth Circuit wrote that "A Facebook link or an email address may very well readily enable an 'ordinary person' to identify an individual." 876 F.3d at 985. Defendant urges the Court to dismiss the Complaint based upon each of these cases, but never mentions these passages carving out Facebook IDs from the opinions' holdings regarding personally identifiable information. *See* ECF No. 14-1, 8-11.[2]

Regardless, Plaintiffs' Complaint specifically alleges that an ordinary person could determine Plaintiffs' identities with access to their Facebook IDs. It states:

> With only a person's FID and the title of the prerecorded video material (or URL where such material is available for purchase) that the person purchased from Defendant on its Website—all of which Defendant knowingly provides to Meta on a systematic basis—any **ordinary person** could learn the identity of the person to whom the FID corresponds and the title of the specific prerecorded video material that the person purchased (and thus requested and obtained). This can be accomplished simply by accessing the URL www.facebook.com/[insert the person's FID here]/.

ECF No. 12, ¶ 70 (emphasis added). It also alleges that the Plaintiffs and putative class members have Meta accounts, Facebook profiles, and corresponding Facebook IDs, thereby tying their accounts to these allegations. *Id.* at ¶¶ 9-14, 16-21, 23-29, 76.

---

[2] On the contrary, Defendant states in its memorandum of law that "[t]he [Facebook IDs] that Plaintiffs allege Onnit disclosed in this case are no different from the serial numbers in *Eichenberger.*" ECF No. 14-1 at 10.

In response, Defendant resorts to out-right mischaracterizations of the Complaint when it asserts that "the Complaint fails to allege that Plaintiffs' Facebook profiles personally identify Plaintiffs or are otherwise publicly accessible."  *See* ECF No. 14-1, 5.  But, the Complaint *does* allege that Plaintiff Hickerson's Facebook profile was publicly accessible when he purchased prerecorded videos from Defendant.  ECF No. 12, ¶ 26 ("Plaintiff Hickerson's Facebook account was set to public status when he purchases the prerecorded video materials from Defendant's Website").  Further, the Complaint is replete with allegations that Facebook profiles and Facebook IDs are personally identifying.  *See, e.g.*, *id.* at ¶ 4 ("A Meta profile . . . identifies by name the specific person to whom the profile belongs (and also contains other personally identifying information about the person."); ¶ 60 (alleging that possessing a Facebook ID "allows anyone to look sup the user's unique Meta profile and thus identify the user by name.").

In its attempts to discredit the allegations regarding Plaintiffs McAlpine and Gremmo, Defendant navigates far beyond the four corners of the Complaint.  Its motion improperly attempts to place evidentiary disputes before the Court based on facts which are nowhere alleged in the Complaint.  *See* ECF No. 14-1, 5-8; *see Spivey*, 197 F.3d at 774 (a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion).  In addition to being inappropriate at the pleading stage, Defendant fails to recognize that an individual may have maintained a public Facebook profile while purchasing prerecorded videos from Defendant's website, and subsequently changed their profile to private after learning about the repeated invasions of privacy accomplished by Defendant's use of Meta's technology.  *See* ECF No. 6-1, 6-7.  In any event, with respect to Plaintiffs McAlpine and Gremmo, the issue presents

15

a factual dispute which cannot be resolved on a motion to dismiss, as Defendant acknowledges. *See St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991); ECF No. 6-1, 6 n.3. The motion must be resolved in reference to the Complaint, which sufficiently alleges that Plaintiffs' Facebook profiles contain personally identifiable information which can be used to identify them. *See* ECF No. 14-1, ¶¶ 4, 9-14, 16-21, 60.

Because the Complaint plausibly alleges that Defendant disclosed Plaintiffs' and the putative class members' personally identifiable information under either the "ordinary person" or "reasonable and foreseeable" standard, Defendant's motion to dismiss should be denied.

## II.    The Complaint Alleges Defendant Knowingly Made the Disclosures

The Complaint alleges throughout that Defendant knowingly disclosed its consumers' personally identifiable information to Meta by installing the Meta Pixel on its website in order to improve its marketing and advertising abilities. As explained more fully below, Defendant's arguments to the contrary must be rejected.

### A.    Defendant Installed the Meta Pixel on the Website Knowing and Intending that It Would Transmit Personally Identifiable Information to Meta

Defendant argues that it did not disclose its consumers' personally identifiable information because that disclosure was accomplished through a tool developed by another entity, the Meta Pixel. *See* ECF Nos. 14-1, 14-17. As presented in Defendant's memorandum, this argument is completely unsupported by any authorities adopting its reasoning. *Id.* However, Courts have correctly held that a defendant who installs the Meta

Pixel on its website knowingly makes disclosures to Meta, just as Plaintiffs' Complaint alleges.

For example, in *Czarnionka v. Epoch Times Association, Inc.*, the defendant argued that the plaintiff had not plausibly alleged that "Epoch even knew the Facebook ID existed much less that Epoch considered the Facebook ID to be PII or knew it was transmitted[.]". 2022 WL 17069810 at *3. The court soundly rejected this argument based on the complaint's allegations that the defendant programmed the Meta Pixel into its website code and knew that it would transmit video titles and Facebook IDs to Meta. *Id.* Other courts considering the issue have consistently reached the same conclusion. *See, e.g.*, *Lebakken*, 640 F. Supp. 3d at 1342-43 (denying motion to dismiss); *Frawley*, 2024 WL 3798073 at *9 (same); *Li*, 2023 WL 7280519, at *4 (same); *Feldman*, 659 F. Supp. 3d at 1021-1022 (same); *Harris*, 662 F. Supp. 3d at 1336 (same); *Belozerov*, 646 F. Supp. 3d at 315 (same); *Adams v. Am.'s Test Kitchen, LP*, 680 F. Supp. 3d 31, 43 (D. Mass. 2023) (same), *appeal dismissed sub nom. Adams v. Am.'s Test Kitchen, Inc.*, No. 23-1592, 2024 WL 3515257 (1st Cir. July 17, 2024).

The Complaint sufficiently alleges that Defendant knowingly disclosed its consumers' Facebook IDs and URLs identifying and containing the names of the videos the consumers requested or obtained to Meta. Plaintiffs allege that Defendant installed the Meta Pixel on its website knowing that it would transmit the personally identifiable information to Meta. For example, the Complaint states:

> Defendant knowingly disclosed Plaintiffs' and Class members' Private Viewing Information to Meta via the Meta Pixel technology because Defendant intentionally installed and programmed the Meta Pixel code on its Website, **knowing that such code would transmit to Meta the titles of the**

**video materials purchased by its customers coupled with its customers' unique identifiers** (including [Facebook IDs]).

ECF No. 12, ¶ 87 (emphasis added).    Further, the Complaint contains the following allegations that clearly establish Defendant's knowing disclosures:

- "Plaintiffs bring this action to redress Defendant Onnit Labs, Inc.'s ("Onnit") practices of **knowingly disclosing** Plaintiffs' and its other customers' identities and the titles of the prerecorded video materials that they purchased to Meta . . . ." *Id*. at ¶ 1 (emphasis added)

- "[T]he Meta Pixel technology that Defendant **intentionally installed** on its Website transmits the customer's personally identifying information and detailed Private Viewing Information (revealing the specific titles of the prerecorded video material that he or she purchased) to Meta . . . ." *Id*. at ¶ 57 (emphasis added).

- "Defendant **intentionally programmed its Website to include the Meta Pixel code** in order to take advantage of the targeted advertising and other informational and analytical services offered by Meta. The Meta Pixel code systematically transmits to Meta the FID of each person with a Meta account who purchases prerecorded video material on its Website, along with the specific title of the prerecorded video material that the person purchased." *Id*. at ¶ 69.

- "With only a person's FID and the title of the prerecorded video material (or URL where such material is available for purchase) that the person purchased from Defendant on its Website—**all of which Defendant knowingly provides to Meta on a systematic basis** . . . ." *Id*. at ¶ 70 (emphasis added).

- "At all times relevant hereto, Defendant **knew that the Meta Pixel was disclosing its customers' Private Viewing Information to Meta**." *Id*. at ¶ 72 (emphasis added).[3]

- "Although Defendant could easily have programmed its Website so that none of its customers' Private Viewing Information is disclosed to Meta, **Defendant instead chose to program its Website so that all of its**

---

[3] The Complaint defines "Private Viewing Information" as "information that reveals the specific videos that a particular person purchased on Defendant's Website."  ECF No. 12, ¶ 4.

**customers' Private Viewing Information is disclosed to Meta**." *Id.* at
¶ 73 (emphasis added).

Any one of these allegations, standing alone, would be sufficient to allege Defendant's
knowing disclosure of personally identifiable information.   Taken together, they paint a
comprehensive picture of how Defendant intentionally and knowingly utilized the Meta Pixel
to disclose its consumers personally identifiable information to Meta to improve its own
marketing and advertising abilities.

**B.      Meta's Cookies Policy and Privacy Policy Have No Bearing on
         Plaintiffs' Claims**

Defendant argues that Meta's Cookies Policy and Privacy Policy disclose the
operation of the cookies transmitted by the Meta Pixel containing Plaintiffs' personally
identifying information, and that Plaintiffs consented to those policies by establishing
accounts on Meta's internet properties. ECF No. 14-1, 16. Defendant suggests that these
purported policy disclosures, disclosures made by a third party and not Defendant itself, and
which appear nowhere in the Complaint, should bar Plaintiffs' claims.  *Id.*   However,
Defendant provides no cases applying this argument to VPPA claims because not a single
court has embraced Defendant's reasoning. *See Id.*

Defendant's argument fails for at least three reasons.  First, Meta's Cookies Policy and
Privacy Policy are not mentioned in the Complaint, nor are facts sufficient to determine
whether Plaintiffs agreed to be bound by them, nor would such a determination be proper in
resolving a Rule 12(b)(6) motion to dismiss in any case.  *See Spivey*, 197 F.3d at 774.  Second,
even if the Court could resolve such factual questions at this stage, Meta's Cookie Policy and
Privacy Policy would only bind parties who consented to those policies, and there is no

allegation that Defendant is a third-party beneficiary of those policies.  The lone decision cited by Defendant in this part of its argument, *Smith v. Facebook*, concerned a suit against Facebook, Inc. itself (the predecessor in interest to Meta), not a third-party using Facebook's technology (like Defendant).  ECF No. 14-1, 16 (citing 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017), *aff'd* 745 F. App'x 8 (9th Cir. 2018)).  Third, *Smith* did not involve allegations arising from the Meta Pixel at all and subsequent courts considering such allegations, even against Meta itself, have declined to extend its holding to that context.  *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 792 (N.D. Cal. 2022).

## V.  <u>CONCLUSION</u>

For the reasons stated herein, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss in its entirety and, in the alternative, provide leave to amend if the Court grants the motion.

Respectfully submitted,

Dated:   November 26, 2024

**HEDIN LLP**

/s/ Tyler K. Somes
Tyler K. Somes
District of Columbia Bar No. 90013925
HEDIN LLP
1100 15th Street NW, Ste 04-108
Washington, D.C. 20005
Telephone:    (202) 900-3332
Facsimile:     (305) 200-8801
tsomes@hedinllp.com

Frank S. Hedin*
Florida Bar No. 109698
Elliot O. Jackson
Florida Bar No. 1034536
HEDIN LLP
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone:    (305) 357-2107
Facsimile:     (305) 200-8801
fhedin@hedinllp.com
ejackson@hedinllp.com

AND

Matthew J. Langley (*pro hac vice*)
Florida Bar No. 97331
ALMEIDA LAW GROUP LLC
849 W. Webster Avenue
Chicago, Illinois 60614
Telephone:    (312) 576-3024
matt@almeidalawgroup.com

*Counsel for Plaintiffs and Putative Class*

 * Pro Hac Vice Motion Forthcoming

21

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will provide electronic notification of such filing to all parties of record and served a copy via email on Defendant's retained counsel.

<u>/s/ Tyler K. Somes</u>