**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

**ERIC MACALPINE; ANDREW GREMMO; and BRIAN HICKERSON individually and on behalf of all others similarly situated,**

**Plaintiffs**

**v.**

**ONNIT LABS, INC.,**

**Defendant.**

**Case No. 1:24-cv-00933-DII**

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**

Adam Bowser (VA Bar No. 76523)
Tierra S. Jones (DC Bar No. 1644196, admitted *pro hac vice*)
ArentFox Schiff LLP
1717 K Street, N.W.
Washington, D.C. 20006
Phone: 202.857.6000
Fax: 202.857.6395
adam.bowser@afslaw.com
tierra.jones@afslaw.com

Counsel for Defendant
*Onnit Labs, Inc.*

December 10, 2024

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiffs Still Fail to Allege That Their Facebook Profiles Contain Any Personal Information ..... 2

B. While The Court Should Dismiss The SAC Under Any Standard, It Should Adopt The Prevailing "Ordinary Person" Standard As Needed ..... 6

C. Plaintiff Fails to Plausibly Allege Onnit Disclosed PII Knowingly ..... 9

III. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................10

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017)....................6, 7

*Ghanaat v. Numerade Labs, Inc.*,
689 F.Supp.3d 714 (N.D. Cal. 2023)....................4

*Golden v. NBCUniversal Media*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023)....................4

*Heerde v. Learfield Commc'ns, LLC*,
No. 2:23-CV-04493, 2024 WL 3573874 (C.D. Cal. July 19, 2024)....................1, 5, 6

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d at 1095, 1097....................9

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)....................9

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016)....................6, 7

*Okpalobi v. Foster*,
190 F.3d 337 (5th Cir. 1999)....................8

*Smith v. Goguen*,
415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974)....................8

*United States v. Sineneng-Smith*,
140 S. Ct. 1575 (2020)....................4

*United States v. Tabb*,
949 F.3d 81 (2d Cir. 2020)....................7

*Wilson v. Triller*,
598 F.Supp.3d 82 (S.D.N.Y. 2022)....................6, 7

*Yershov v. Gannett Satellit Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) ........................................................................................6, 8

**Statutes**

18 U.S.C. § 2710 ........................................................................................................1, 8

18 U.S.C. § 2710(a)(3) ...................................................................................................1, 3

18 U.S.C. § 2710(b)(1) ...................................................................................................6, 7

18 U.S.C. § 2710(e) ...........................................................................................................7

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .........................................................................10

# I. INTRODUCTION

The Opposition of Plaintiffs Eric MacAlpine, Andrew Gremmo, and Brian Hickerson ("Plaintiffs") underscores that Plaintiffs still have not adequately pleaded a violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). Defendant Onnit Labs, Inc. ("Onnit") filed its first Motion to Dismiss on October 9, 2024, arguing that the original Plaintiffs MacAlpine and Gremmo failed to plausibly allege that (1) their Facebook profiles were either public or contained *any* personal information, and (2) any alleged disclosure to Meta of the metadata associated with their visit to Onnit's website through the Meta pixel on Onnit's website was "knowing." *See* ECF No. 6.

Instead of opposing Onnit's Motion, Plaintiffs filed a further amended complaint (the "SAC") that entirely ignored Onnit's primary argument: Plaintiffs did not initially, and still have not, alleged *any* facts showing that their Facebook profiles contain any personal information, let alone sufficient personal information to identify them. *See generally* SAC. The SAC's silence on this point is deafening, and dispositive. Indeed, Plaintiffs' amendment of their complaint to add Plaintiff Hickerson, but doing so only to allege that his, and only his, Facebook profile is merely *public*, simply reinforces Onnit's original observation that Plaintiffs could not amend their claims to plausibly allege that their Facebook profiles *personally identify* the Plaintiffs. That, again, should be case dispositive.

That's because "[t]he VPPA defines PII to 'include[] information which ***identifies a person*** as having requested or obtained specific video materials or services from a video tape service provider." *Heerde v. Learfield Commc'ns, LLC*, No. 2:23-CV-04493, 2024 WL 3573874, at *3 (C.D. Cal. July 19, 2024) (emphasis added) (quoting 18 U.S.C. § 2710(a)(3)). The problem here is simple: the SAC does not allege that anything on Plaintiffs' Facebook page actually identifies

them. Alleging such facts should be easy to do, but Plaintiffs did not add these facts to the SAC. Accordingly, the SAC fails to state a VPPA claim and should be dismissed.

## II. ARGUMENT

### A. Plaintiffs Still Fail to Allege That Their Facebook Profiles Contain Any Personal Information

The SAC continues to fail to state a plausible claim under the VPPA for a very simple reason: Plaintiffs do not allege that their Facebook profiles contain "personally identifiable information" as that term is defined under the VPPA. Despite being on notice of this exact deficiency from Onnit's first Motion to Dismiss and taking the opportunity to amend their Complaint, Plaintiffs still fail to allege that their Facebook profiles contain information that "would readily permit an ordinary person" to identify them, or that even Facebook could. The fact that Plaintiffs do not allege these facts is telling, as this information is clearly within their control and should be easy to add – if such allegations had evidentiary support.

The Opposition falsely proclaims that "[c]ourts have consistently held that Facebook IDs ["FID"] disclosed to Meta in combination with the URLs or names of videos requested or obtained by consumers constitute 'personally identifiable information' under the VPPA. Defendant does not cite a single case indicating otherwise." Opp. at 5. Of course, Onnit cited and summarized *five* recent decisions dismissing indistinguishable VPPA complaints on the *exact* grounds raised by Onnit here: an FID is *not* personally identifiable if the Facebook profile itself does not contain personally identifiable information. Mem. at 5-6. Plaintiffs' conclusory dismissal of these cases as "inapposite" does not make it so. Rather, all these cases are directly on point and stand for the common-sense proposition that an FID – a random string of numbers – cannot possibly *identify a person*, as the VPPA requires, unless the associated Facebook profile itself does.

This conclusion must follow from Plaintiffs' own alleged theory of the case. That is, Plaintiffs assert that "any ***ordinary person*** **could learn the identity of the person** to whom the FID corresponds … . This can be accomplished simply by accessing the URL www.facebook.com/[*insert the person's FID here*]/." SAC ¶ 70 (emphasis added). The FID, according to Plaintiffs, is thus only a *means* to an *end* – the Facebook profile itself. And if that end is not personally identifiable, it is a dead end under the plain language of the VPPA. *See* 18 U.S.C. § 2710(a)(3) (defining "personally identifiable information" as "[1] information which **identifies a person** [2] as having request or obtained specific video material or services …") (emphasis added).

To be sure, earlier VPPA cases may have a concluded a FID can be personally identifiable, but they did so without considering this exact issue. The Opposition relies heavily on a few select cases, each of which is distinguishable. For example, in *Jackson v. Fandom, Inc.*, the court held that "[w]hile sharing Jackson's Facebook Profile ID with Meta—which owns Facebook—would certainly permit Meta to identify Jackson, such disclosure ***only violates the VPPA if an ordinary person would be able to identify Jackson using her Facebook Profile ID.***" No. 22-CV-04423, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023) (emphasis added). In *Jackson*, the complaint alleged that "Jackson's Facebook profile includes personal information about her including her name and other personal details." No. 22-CV-04423, ECF No. 11, ¶ 21. That critical allegation is conspicuously absent in the SAC and renders it distinguishable from *Jackson.*[1]

[1] Plaintiffs' assertion that their "Complaint allegations are almost identical to those in *Jackson v. Fandom*," Opp. at 9, should not be well taken. Plaintiffs lodged *no* allegations that their individual Facebook profiles contain their names and other personal details like Jackson. To reiterate, only *one* Plaintiff is alleged to have a *public* profile, but there are no allegations that it contains any personally identifiable information. This is hardly "almost identical."

Similarly, in *Fan v. NBA Properties*, the court noted that an FID constitutes PII because it enables one to identify "all **personal information publicly listed** on [an individual's] [Facebook] profile." No. 23-CV-05069, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024) (emphasis added). But here, Plaintiffs have repeatedly failed to allege that any such information exists on ***their*** profiles despite having the opportunity and notice to do so. Again, the absence of these allegations doom their claim.

*Golden v. NBCUniversal Media*, 688 F. Supp. 3d 150, 160 (S.D.N.Y. 2023), Opp. at 8, 10, is similarly distinguishable because the court simply assumed, without analysis, that the Facebook cookie would be transferring PII, including the specific identity of the person. *Id.* ("Insofar as the statutory definition of PII includes that the **identified person** 'requested or obtained specific video material or services,'") (emphasis added). The court did ***not*** address the primary question here: whether a plaintiff plausibly alleges a VPPA claim when he fails to allege his social media profile contained his PII. In fact, NBC *never* raised that argument in its briefing. Civ. No. 1:22-CV-09858-PAE, ECF No. 16. Under the party presentation principle,[2] it is hardly surprising that the court would not have *sua sponte* addressed an argument that NBC itself did not raise.

The newer and more well-reasoned cases, however, have rightly drawn this distinction when this common-sense argument was squarely presented. Again, an FID can only be used to identify a person if the person's public Facebook profile contains sufficient identifying information. *See Ghanaat v. Numerade Labs, Inc.*, 689 F.Supp.3d 714, 720 (N.D. Cal. 2023);

---

[2] Under the party presentation principle, "in both civil and criminal cases, in the first instance and on appeal . . . , we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (citation omitted). The flip side of the party-presentation principle is that the Court – and Plaintiffs – should address the arguments presented by Onnit on their own terms, and not rely on decisions that never addressed these issues. The fact that Plaintiffs fail to do so should be fatal to their claims here.

*Solomon*, 2023 WL 6390055, at *3. In *Heerde*, the plaintiffs, like Plaintiffs here, only alleged the disclosure of their FIDs and video viewing data. *Heerde*, 2024 WL 3573874, at *3. The plaintiffs did not allege any well-pled facts[3] that their Facebook profiles were public or contained any specific information that would identify the plaintiffs if one searched their profiles via their FIDs. *See id.* at *4. The *Heerde* court rightly held that "Plaintiffs fail to allege their PII was disclosed because they do not identify what information on their Facebook pages, if any, was viewable and could be used to identify them." *Id*. The court reasoned that "a person's FID can be used to identify that person ***if the person's Facebook profile is publicly accessible and includes sufficient identifying information***." *Id.* (emphasis added). In other words, there can be no VPPA violation where an FID merely links to a Facebook profile that does not, in turn, identify the plaintiff.

The same result follows here. Despite amending their Complaint again after Onnit raised this exact issue in its original Motion to Dismiss (*see* ECF No. 6), Plaintiffs *still* failed to allege that their Facebook profiles include their PII, and only Plaintiff Hickerson merely alleges that his Facebook profile is public. But so is Batman's,[4] illustrating the point that a public profile by itself is a necessary, but not a sufficient, condition to identify a specific person. Plaintiffs ignore at their peril the central proposition that the *Heerde* court and numerous others have expressly held: that a FID, without more, is *not* PII. Rather, to state a viable VPPA claim, the plaintiff must allege that

[3] The *Heerde* Plaintiffs *did* conclusorily allege that their "profile[s] included personally identifiable information." 2:23-cv-04493-FLA-MAA, ECF No. 1, ¶ 28. Plaintiffs do not even do *that* here as to their specific profiles. Instead, they make the entirely generic assertion that Facebook users should generally provide certain information when they register an account, SAC ¶ 58, but even this generic allegation does not support the inference that whatever information was provided during the registration process is *then available on the profile itself*. Ultimately, Plaintiffs do even lodge a *conclusory* allegation that logically supports their theory of liability, let alone well-pled allegations about their individual profiles. Again, this should be very easy to allege if they do in fact have publicly accessible profiles that personally identify Plaintiffs.

[4] *See* https://www.facebook.com/batman. Presumably he did not use his bruce.wayne@gmail.com account to register this profile, as Plaintiff's generic allegations would suggest.

the plaintiff's "Facebook profile is publicly accessible and includes sufficient identifying information." *Heerde*, 2024 WL 3573874, at *4. *Solomon*, *Ghanaat*, *Edwards, Smith* and *Wilson v. Triller*, 598 F.Supp.3d 82, 90-92 (S.D.N.Y. 2022) likewise all stand for this same proposition. Plaintiffs do not cite to a single case that rejects this common-sense holding when this argument was actually raised and considered by the court.

Ultimately, Plaintiffs have failed to allege any well-pled facts that their individual Facebook profiles were both public *and* contain sufficient personal information to identify them personally, and accordingly, the SAC should be dismissed on this basis alone.

### B. While The Court Should Dismiss The SAC Under Any Standard, It Should Adopt The Prevailing "Ordinary Person" Standard As Needed

As established previously and above, the SAC should be dismissed because it is devoid of any well-pled allegations that *anyone* could identify Plaintiffs from their Facebook profiles, let alone what videos, if any, they purchased from Onnit. This includes an ordinary person *or* Facebook. For their part, Opp. at 10-12, Plaintiffs invite the Court to reject the prevailing "ordinary person" standard adopted by the Third and Ninth Circuits, and followed by numerous other courts. *See* Mem. at 8 (citing *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 267 (3d Cir. 2016); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (in determining whether information constitutes PII, courts "look[] to what information a video service provider discloses, **not to what the recipient** of that information decides to do with it.") (emphasis added). Instead, Plaintiffs ask the Court to consider the outlying "reasonably foreseeable standard" adopted by the First Circuit. Opp. at 11 (citing *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482 (1st Cir. 2016)).

One of the problems with *Yershov*, however, is that it is at odds with the plain language of the statute. That is, as the Ninth Circuit recognized, "18 U.S.C. § 2710(b)(1) focuses on what information a video service provider 'knowingly discloses.' In other words, the statute views

disclosure from the perspective of the disclosing party. It looks to what information a video service provider discloses, not to what the recipient of that information decides to do with it. As a result, 'personally identifiable information' must have the same meaning without regard to its recipient's capabilities." *Eichenberger*, 876 F.3d at 985.

Put differently, *Yershov* essentially rewrites the VPPA from prohibiting a "knowing disclosure of PII," or what is an intentional and willful standard as drafted by Congress, to what is effectively a negligence standard in terms of what a third party *may* do with the data. But again, the plain language of the statute requires the *video tape service provider* to knowingly disclose *personally identifiable information*, 18 U.S.C. § 2710(b)(1), not information that *could be* personally identifiable information when additional information is possibly added later by another party.

Moreover, as the *Wilson* court separately and correctly observed:

> As a matter of statutory interpretation, it appears that the narrower [ordinary person] definition is the correct one. Under the approach set out by the First Circuit in *Yershov*, whether any particular set of information constitutes PII depends on the capabilities of the party or parties to which it is disclosed – that is, the scope of PII is recipient-dependent. However, the VPPA sets out requirements regarding the handling of PII that do not implicate the disclosure of such information to a recipient, including 18 U.S.C. § 2710(e), which imposes an obligation on any "person subject to [the Act]" to "destroy [PII] as soon as practicable." It would make little sense for the scope of PII to be recipient-dependent where the conduct at issue does not involve disclosure to a third-party. Given the principle that "identical words and phrases within the same statute should normally be given the same meaning," *United States v. Tabb*, 949 F.3d 81, 88 (2d Cir. 2020), it follows that the Third Circuit's definition of PII – which does not make the scope of PII dependent on the specifics of the recipient of the disclosure, *see In re Nickelodeon*, 827 F.3d at 290 – applies throughout the Act.

*Wilson*, 598 F. Supp. 3d at 91–92. Thus, the "ordinary person" standard is the one that is not only consistent with the plain language of the statute, but also with the basic rules of statutory construction.

Finally, as Plaintiffs themselves note, *Yershov*'s (mis)interpretation of the VPPA stems from the dubious and troubling premise that "the phrase 'personally identifiable information' is 'awkward and unclear' and that its statutory definition 'adds little clarity…'" Opp. at 11 (citing *Yershov*, 820 F.3d at 486). Based on this perceived (if not manufactured) ambiguity, the court then went on to effectively flip the statute from the disclosing party's perspective to what an unidentified third party *could* reasonably do with such information. With respect to the First Circuit, however, this is not how laws providing for uncapped statutory damages should be interpreted and enforced. Indeed, if such a statute is in fact so "awkward and unclear" that persons "of common intelligence must necessarily guess at [their] meaning and differ as to [their] application," the law should be invalidated, not interpreted *more* broadly.[5] *See Okpalobi v. Foster*, 190 F.3d 337, 357–58 (5th Cir. 1999), *on reh'g en banc*, 244 F.3d 405 (5th Cir. 2001) (holding that "vague laws offend due process" and the vagueness doctrine applies to civil statutes) (quoting *Smith v. Goguen,* 415 U.S. 566, 572 n. 8, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974) (citations omitted)).

Ultimately, the plain language of the VPPA, basic rules of statutory construction, and fundamental considerations of due process and fair notice all mandate that the VPPA be interpreted narrowly, using the "ordinary person" standard adopted by most courts.

---

[5] This is particularly true for a law that expressly governs the "disclosure of *video tape* rental or sales records." 18 U.S.C. § 2710 (emphasis added). Onnit is not Blockbuster, and the "video tape service providers" exclusively regulated by this law are defined as persons engaged in the "rental, sale, or delivery of prerecorded **video cassette tapes** or **similar** audio visual **materials**." *Id.* § 2710(a)(4) (emphasis added). The term "material" under its plain English definition means "a physical substance." *See* https://dictionary.cambridge.org/us/dictionary/english/material. Thus, a similar *material* to a "video cassette tape" would necessarily be a physical product like a DVD or Blu-Ray, not something *immaterial* that is streamed over the Internet. Thus, from top to bottom, the VPPA does not provide fair notice to web-based content providers that they could possibly be swept up into this anachronistic law.

### C. Plaintiff Fails to Plausibly Allege Onnit Disclosed PII Knowingly

Even if Plaintiffs' FIDs constitute PII (and they do not), Plaintiffs' Opposition does not cure their failure to plausibly allege that Onnit knowingly disclosed Plaintiffs' PII. The bar for pleading this element is high. Plaintiff must allege that Onnit had "consciousness of transmitting [PII]"—rather than "merely . . . transmitting the code"—***and*** "that [Onnit] knew that Facebook might combine a [FID] (contained in the c_user cookie) with the watch-page address to yield [PII] under the VPPA." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1095, 1097. Assumptions and conclusory allegations are not enough.

The SAC and Opposition attempt to artfully dance around the fact that the user's browser, not Onnit, discloses the FID to Meta, and Plaintiffs never allege that Onnit actually had *possession* of their FIDs in order to disclose them. But the caselaw on this point is clear. As *In re Facebook, Inc. Internet Tracking Litig.* explains, "[w]hen a user creates a Facebook account, more than ten Facebook cookies are placed on the user's browser. These cookies store the user's login ID [FID], and they capture, collect, and compile the referer headers from the web pages visited by the user." 956 F.3d 589, 596 (9th Cir. 2020); *see also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 787 (N.D. Cal. 2022) ("Cookies are 'small pieces of text used to store information on web browsers.'").

Thus, Plaintiffs' FID is stored on their respective computers, and not by Onnit. The FID, if transmitted at all, is only subsequently sent to Meta by Plaintiff's web browser because Plaintiffs allowed Meta to collect that information. *See id.*, at 788 ("Meta gives users the ability to control the use of information about their off-Facebook activity (such as activity on third-party websites) for advertising purposes . . . . Users can 'disconnect' the off-Facebook activity that has been associated with their account—which prevents the data from being used for personalized advertising.").

The SAC's artful pleading—a blatant attempt to plead around how the cookies at issue actually work—is insufficient to withstand *Iqbal* and *Twombly's* plausibility standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating the facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). The conclusory allegations in the SAC should be summarily disregarded. Simply put, no matter how many times Plaintiffs conclusorily alleged that Onnit "knowingly disclosed" their PII, or bolded that phrase in the Opposition, *id.* at 17-18, it does not change the fact that they do *not* allege that Onnit ever possessed their FIDs, and one cannot disclose what one never possessed. Accordingly, Plaintiffs still fail to plausibly allege Onnit ***knowingly*** disclosed their personally identifiable information to Meta. For this reason, too, the Court should dismiss Plaintiffs' VPPA claim.

## III. CONCLUSION

For the reasons set forth above, Onnit respectfully asks the Court to dismiss the Second Amended Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) with prejudice and without leave to amend.

Dated: December 10, 2024

Respectfully Submitted,

**ARENTFOX SCHIFF LLP**

By: Adam Bowser

Adam Bowser (VA Bar No.76523)
Tierra S. Jones (DC Bar No. 1644196, admitted *pro hac vice*)
ArentFox Schiff LLP
1717 K Street, N.W.
Washington, D.C. 20006
Phone: 202.857.6000
Fax: 202.857.6395
adam.bowser@afslaw.com
tierra.jones@afslaw.com

*Counsel for Defendant, Onnit Labs, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that pursuant to the Federal Rules of Civil Procedure 5, this 10th day of December, 2024 I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Tyler K. Somes (DC Bar No. 90013925)
HEDIN LLP
1100 15th Street NW, Suite 04-108
Washington, D.C. 20005
Phone: 202.900.3332
Fax: 305.200.8801
tsomes@hedinllp.com

Frank S. Hedin (FL. Bar No. 109698)
Elliott O. Jackson (FL. Bar No. 1034536)
HEDIN LLP
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Phone: 305.357.2107
Fax: 305.200.8801
fhedin@hedinllp.com
ejackson@hedinllp.com

Matthew J. Langley (FL Bar No. 97331)
ALMEIDA LAW GROUP LLC
849 W. Webster Avenue
Chicago, Illinois 60614
Phone: 312.576.3024
matt@almeidalawgroup.com



Adam Bowser