**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| ERIC MACALPINE; and BRIAN HICKERSON, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>ONNIT LABS, INC.,<br><br>                    Defendant. | Civil Action No. 1:24-cv-933-DAE |

**PLAINITFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**<u>THE THIRD AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 1

    A.  The Video Privacy Protection Act ......................................................................... 1

    B.  Procedural Background ........................................................................................... 2

    C.  Factual Background ................................................................................................ 3

LEGAL STANDARD ....................................................................................................... 4

ARGUMENT .................................................................................................................... 5

    A.  Plaintiffs Have Article III Standing to Bring Their VPPA Claims ....................... 5

    B.  The Court Should Deny Defendant's Rule 12(b)(6) Motion to Dismiss ............... 12

        1.      Defendant May Not Raise New Arguments Under Rule 12(b)(6) that Were Available When It Filed its Motion to Dismiss the Prior Complaint ................. 12

        2.      Plaintiffs Sufficiently Allege the Information Disclosed by Defendant Constitutes PII Within the Meaning of the VPPA ................................. 13

        3.      The "Ordinary Course of Business" Exception Does Not Apply ......................... 17

        4.      Streaming Prerecorded Videos Online Falls Within the VPPA ........................... 19

CONCLUSION ................................................................................................................. 20

CERTIFICATE OF SERVICE ......................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

**United States Supreme Court**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................................. 5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................................. 5

*Bostock v. Clayton Cnty., Georgia,*
    590 U.S. 644 (2020)............................................................................................... 19

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992)................................................................................................. 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007)................................................................................................. 5

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021)............................................................................................. 6, 7

*Tyler v. Hennepin County,*
    598 U.S. 631 (2023)................................................................................................. 5

**United States Courts of Appeals**

*Carder v. Continental Airlines, Inc.,*
    636 F.3d 172 (5th Cir. 2011). ............................................................................... 17

*Eichenberger v. ESPN, Inc.,*
    876 F.3d 979 (9th Cir. 2017). .......................................................................... 8, 10

*Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.,* 9
    9 F.4th 770 (5th Cir. 2024). .......................................................................... 10, 14

*Hughes v. NFL,*
    No. 24-2656, 2025 WL 1720295 (2d Cir. June 20, 2025). .................................. 17

*In re Facebook, Inc., Consumer Priv. User Profile Litig.,*
    402 F. Supp. 3d 767 (N.D. Cal. 2019) .................................................................20

*In re Hulu Priv. Litig.*,
    No. C-11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ....................................20

*Jackson v. Fandom, Inc.*,
    No. 22-cv-04423-JST, 2023 WL 4670285 (N.D. Cal. July 20, 2023)....................................20

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) ...................................................................................... 5

*In re Nickelodeon Consumer Priv. Litig.*,
    827 F.3d 262 (3d Cir. 2016)........................................................................................ 7

*Lane v. Halliburton*,
    529 F.3d 548 (5th Cir. 2008). ..................................................................................... 5

*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*,
    369 F.3d 464 (5th Cir. 2004) ...................................................................................... 5

*Paterson v. Weinberger*,
    644 F.2d 521 (5th Cir. 1981). ..................................................................................... 5

*Perry v. Cable News Network, Inc.*,
    854 F.3d 1336 (11th Cir. 2017). .................................................................................. 7

*Pileggi v. Washington Newspaper Publ'g Co., LLC*,
    146 F.4th 1219 (D.C. Cir. 2025). ...................................................................... 8, 9, 10

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001). ..................................................................................... 4

*Salazar v. NBA*,
    118 F.4th 533 (2d Cir. 2024). .......................................................................... 7, 9, 10, 19

*Salazar v. Paramount Glob.*,
    133 F.4th 642 (6th Cir. 2025). .................................................................................... 6

*Solomon v. Flipps Media, Inc.*,
    136 F.4th 41 (2d Cir. 2025). ..................................................................................... 16

*Stark v. Patreon, Inc.*,
    635 F. Supp. 3d 841 (N.D. Cal. 2022) ......................................................................20

*Sterk v. Redbox Automated Retail, LLC*
    770 F.3d 618, 623 (7th Cir. 2014) ...................................................................... 7, 19

iii

*United States v. Hastie*,
    854 F.3d 1298 (11th Cir. 2017). ..................................................... 15

**United States District Courts**

*Ade v. Viki, Inc.*,
    No. 23-cv-02161-RFL, 2024 WL 1880153 (N.D. Cal. Mar. 28, 2024)................................. 19

*Aldana v. GameStop, Inc.*,
    No. 22-CV-7063-LTS, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024). ................................... 15

*Archer v. NBCUniversal Media, LLC*,
    2025 WL 2601509 (C.D. Cal. July 2, 2025). .................................................. 11, 17

*Collins v. Toledo Blade*,
    720 F. Supp. 3d 543 (N.D. Ohio 2024)....................................................... 8, 19

*Daily Wire, LLC v. United States Dep't of State*,
    733 F. Supp. 3d 566 (E.D. Tex. 2024). ...................................................... 11

*Hernandez v. Casey*,
    No. 3:16-CV-452-M-BH, 2017 WL 685679 (N.D. Tex. Jan. 12, 2017). ......................... 12, 14

*Inclusive Communities Project, Inc. v. United States Dep't of Treasury*,
    No. 3:14-CV-3013-D, 2016 WL 6397643 (N.D. Tex. Oct. 28, 2016). ................................ 12

*Lee v. Springer Nature Am., Inc.*,
    769 F. Supp. 3d 234 (S.D.N.Y. 2025)....................................................... 16, 19

*Louth v. NFL Enters. LLC*,
    No. 1:21-cv-00405, 2022 WL 4130866 (D.R.I. Sept. 12, 2022). .................................. 18

*Markels v. AARP*,
    689 F. Supp. 3d 722 (N.D. Cal. 2023). ....................................................... 18

*Osheske v. Silver Cinemas Acquisition Co.*,
    700 F. Supp. 3d 921 (C.D. Cal. 2023). ....................................................... 10

*Physicians Wellness Grp., Inc. v. Mooni Ltd.*,
    No. 4:22-CV-597-BJ, 2023 WL 11959701 (N.D. Tex. Sept. 7, 2023)........................... 12, 14

*Rancourt v. Meredith Corp.*,
    No. 22-CV-10696-ADB, 2024 WL 381344 (D. Mass. Feb. 1, 2024). ................................ 18

*Sable Networks, Inc. v. Cloudflare, Inc.*,
    No. 6:21-cv-00261-ADA, 2024 WL 718690 (W.D. Tex. Feb. 5, 2024). .............................. 15

*Saunders v. Hearst Television, Inc.*,
    711 F. Supp. 3d 24 (D. Mass. 2024). ....................................................................... 18

*Sterk v. Redbox Automated Retail, LLC*,
    No. 11 C 1729, 2013 WL 4451223 (N.D. Ill. Aug. 16, 2013) ................................. 8

*Stoffels ex rel. SBC Concession Plan v. SBC Commc'ns, Inc.*,
    430 F. Supp. 2d 642 (W.D. Tex. 2006)...................................................................... 12

## **Constitutions**

U.S. Const. art. III. ......................................................................................... 5, 7, 8, 11

## **Statutes**

18 U.S.C. § 2710(a)(1).................................................................................... 2, 11, 15
18 U.S.C. § 2710(a)(2)......................................................................................... 2, 18

18 U.S.C. § 2710(b)(1) ........................................................................................ 2, 17

18 U.S.C. § 2710(b)(2)(E) ....................................................................... 2, 9, 17, 18, 19

Fair Debt Collection Practices Act, 15 USC 1692 et seq. ............................................. 9

Video Privacy Protection Act, 18 U.S.C. § 2710................................................... *passim*

## **Rules**

Fed. R. Civ. P. 12 ..................................................................................................... 12

Fed. R. Civ. P. 12(b)(1)......................................................................................... 4, 11

Fed. R. Civ. P. 12(b)(6).......................................................................................... 5, 12

Fed. R. Civ. P. 12(g)(2)............................................................................................. 12

## **Other Authorities**

S. Rep. No. 100-599 (1988) ................................................................................... 8, 18

## INTRODUCTION

After the Court denied Defendant Onnit Labs, Inc.'s ("Defendant") prior motion to dismiss, Plaintiffs Eric MacAlpine and Brian Hickerson ("Plaintiffs") filed an amended complaint to add allegations concerning additional third-party recipients of the personally identifiable information ("PII") that Defendant discloses in violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). Despite the Court's prior order, Defendant filed the instant motion to dismiss, now raising for the first time an argument that Plaintiffs lack standing and, as a second challenge to the merits of their claim, that the information Defendant is alleged to have disclosed does not constitute PII within the meaning of the VPPA. As shown below, Plaintiffs' allegations in the Third Amended Complaint (the "Complaint") demonstrate that Plaintiffs have Article III standing to bring their VPPA claim. As to Defendant's second attack on the merits of Plaintiffs' claim, the Court has already determined that the information at issue constitutes PII within the meaning of the VPPA, and Defendant is not permitted to raise this new argument since it was available, but not previously raised by Defendant, before Plaintiffs filed their amended pleading. In any event, the Court should deny Defendant's motion to dismiss because Plaintiffs' allegations in the Complaint continue to show that Plaintiffs have sufficiently stated a claim, as explained more fully below.

## BACKGROUND

**A.    The Video Privacy Protection Act.**

The United States Congress passed the VPPA in 1988. President Ronald Reagan signed the legislation into law that same year. It is designed to protect the privacy interests of consumers who request or obtain video materials from commercial providers of such services.

The VPPA defines "personally identifiable information" as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).  It establishes that "A video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person" for the statutorily defined relief.  18 U.S.C. § 2710(b)(1).  Several exceptions to this liability are enumerated, including that: "A video tape service provider may disclose personally identifiable information concerning any consumer . . . to any person if the disclosure is incident to the ordinary course of business of the video tape service provider[.]" 18 U.S.C. § 2710(b)(2)(E). The VPPA defines the term "ordinary course of business" to mean "only debt collection activities, order fulfillment, request processing, and the transfer of ownership[.]" 18 U.S.C. § 2710(a)(2).

### B.    Procedural Background.

On November 12, 2024, Defendant filed a motion to dismiss Plaintiffs' Second Amended Complaint. ECF No. 14. Defendant's November 12, 2024 motion raised two arguments: (1) Plaintiffs' Second Amended Complaint failed to allege that the information at issue constitutes PII under the VPPA; and (2) Plaintiffs' Second Amended Complaint failed to allege that Defendant made any knowing disclosure. *Id.* at 4-17. Defendant's November 12, 2024 motion to dismiss did not challenge whether (1) the metadata at issue reveals to an ordinary person that a specific video was purchased; (2) the "ordinary course of business" exception applies; or (3) streaming falls within the VPPA. *See generally id.*

On May 14, 2025, the Court issued an order denying Defendant's motion to dismiss Plaintiffs' Second Amended Complaint. ECF No. 26. In that Order, the Court found that "Plaintiffs sufficiently allege their Facebook IDs and the URLs of the video materials they requested or

obtained from Defendant constitute PII within the meaning of the VPPA." *Id.* at 10. The Court further found that "Plaintiffs sufficiently allege that Defendant knowingly disclosed their PII by intentionally installing the Meta Pixel on its Website. As such, Plaintiffs have plausibly alleged the elements of a VPPA claim." *Id.* at 12.

### C.     Factual Background.

On July 30, 2025, Plaintiffs filed the operative Complaint. ECF No. 35.[1] The Complaint alleges that Defendant is a "video tape service provider." ¶¶ 30, 84. It details how Defendant operates the website, www.onnit.com, where it "sells prerecorded video materials to consumers." ¶¶ 28, 55-62. The Complaint states that "[t]hese video materials include 'Digital & Online Streaming Products' such as 'On-Demand Workouts.'" ¶ 56. As an example, a screenshot shows the "Onnit 6 Steel Mace" video program, also priced at $49.95, which depicts a man crouching barefoot in a river and wielding a steel mace. ¶ 57.

The Complaint further alleges that Defendant disclosed Plaintiffs' and its other consumers' "personally identifiable information" to Meta, Google, HubSpot, Bounce Exchange, and Bazaarvoice via tracking pixels that it installed on its Website. ¶¶ 63-170. As to information disclosed to Meta, it alleges that Defendant disclosed Plaintiffs' and its other consumers' Facebook ID and the identity of the specific prerecorded video material that each of its customers requested or obtained through a purchase on the Website. ¶ 71. This includes "the fact that the customer has the specifically identified video materials in his or her 'cart' and that they are in the 'checkout' process." ¶ 96. As to information disclosed to Google HubSpot, Bazaarvoice, and Bounce Exchange, it alleges that whenever a person purchases prerecorded video materials on Defendant's Website, the respective tracking pixel transmits the customer's email address and the title of the

---

[1]     All paragraph citations refer to the operative pleading. *See* ECF No. 35.

specific video materials the person purchased. ¶¶ 113, 133, 150, 163. It includes screenshots of metadata from pages displayed *after* the person completes the checkout process on Defendant's Website, showing that this information is transmitted to Google, HubSpot, Bazaarvoice, and Bounce Exchange. ¶¶ 116-117, 134, 151, 164.

The Complaint states that Facebook IDs are personally identifying because they are each indexed to an individual's Facebook account, which includes the individual's name and other personally identifying information. ¶¶ 6, 77 (explaining how possessing an FID "allows anyone to look up the user's unique Meta profile and thus identify the user by name"). The Complaint also states that email addresses are personally identifying because any ordinary person can use an email address to uniquely identify the individual to whom it belongs. ¶ 114 (stating also that "[v]oluminous services exist which enable individuals to look up the owners of a particular email address").

The Complaint alleges that Defendant knowingly disclosed Plaintiffs' and Class members' PII to Meta, Google, HubSpot, Bazaarvoice, and Bounce Exchange through the tracking pixels because it intentionally installed and programed the tracking pixel code on its Website, knowing that such code would transmit to these third parties the titles of the video materials purchased by its customers along with its customers' unique identifiers. ¶ 182. Defendant did not obtain Plaintiffs' or any Class member's informed written consent authorizing it to disclose their PII to any third party. ¶ 183.

## LEGAL STANDARD

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In evaluating a Rule 12(b)(1) motion, the court may consider "(1) the complaint alone; (2) the complaint supplemented

by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). A facial attack happens when a defendant files a Rule 12(b)(1) motion without accompanying evidence. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). A "factual attack" upon the court's subject matter jurisdiction is one in which "the defendant submits affidavits, testimony, or other evidentiary materials." *Id.*

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Review is limited to the contents of the complaint and matters properly subject to judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). In analyzing a motion to dismiss for failure to state a claim, "[t]he [C]ourt accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

### A.    Plaintiffs Have Article III Standing to Bring Their VPPA Claims.

To establish Article III standing, "a plaintiff must plead an injury in fact attributable to the defendant's conduct and redressable by the court." *Tyler v. Hennepin County*, 598 U.S. 631, 636 (2023). The injury in fact must be both "concrete and particularized." *Lujan v. Defs. of Wildlife*,

504 U.S. 555, 560 (1992). To allege a concrete harm, a plaintiff must point to "a close historical or common-law analogue for their asserted injury." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). But this common-law analogue need not be an "exact duplicate." *Id.* at 433. Rather, what matters is "whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 424.

Here, Plaintiffs have adequately alleged an injury-in-fact.[2] The Complaint alleges that Defendant has systematically transmitted Plaintiffs' and its other customers' personally identifiable information to Meta, Google, HubSpot, Bounce Exchange, and Bazaarvoice via tracking pixels that it installed and configured on its Website without obtaining Plaintiffs' or Defendant's other customers' informed, written consent. ¶¶ 55-170. As alleged, Defendant's conduct invaded Plaintiffs' statutorily conferred interest in keeping their personally identifying information private. ¶ 18 (Plaintiff MacAlpine); ¶ 27 (Plaintiff Hickerson). Plaintiffs further allege that their personally identifiable information has real market value, ¶¶ 38-49, and they place monetary value on their privacy, ¶¶ 50-54. Thus, the Complaint adequately alleges facts demonstrating that Defendant disclosed to Meta, Google, HubSpot, Bazaarvoice, and Bounce Exchange information that identified Plaintiffs as purchasers of specific titles of prerecorded video products (among other details concerning Plaintiffs and their purchases)—without first notifying Plaintiffs of, or obtaining their prior written consent to, these practices—and that these disclosures not only violated the VPPA but additionally invaded Plaintiffs' right to privacy and intruded on their private affairs. These allegations are sufficiently concrete to manifest an injury-in-fact as

---

[2]    Defendant does not argue that Plaintiffs have not satisfied the traceability or redressability elements of Article III standing. *See generally* Motion. For the avoidance of doubt, Plaintiffs have also satisfied those elements. *See* ¶¶ 18, 27, 177-185, Prayer for Relief; *Salazar v. Paramount Glob.*, 133 F.4th 642, 647-48 (6th Cir. 2025) (holding under similar facts that plaintiff satisfied Article III standing requirements).

required by Article III. *See TransUnion*, 594 U.S. at 425; *Salazar v. NBA*, 118 F.4th 533 at 541 (2nd Cir. 2024).

Indeed, every federal circuit court of appeals that has considered this issue has uniformly held that the nonconsensual disclosure of a plaintiff's personally identifying video purchase-related information to a third party, in violation of the VPPA, readily satisfies the concreteness prong of Article III's standing requirement. For example, in *Salazar v. NBA*, the Second Circuit recently found Article III standing where a plaintiff alleged a VPPA claim arising from the same sort of disclosures that Defendant is alleged to have made in this case, explaining:

> [W]e similarly have "no trouble" holding here that Salazar's alleged harm is sufficiently concrete to withstand dismissal. Like *Bohnak*, Salazar's core allegation is that his personally identifiable information was exposed to an unauthorized third party, [Meta]. And Salazar doesn't just allege that his data was *exposed* to a third party; rather, he asserts that it was *disclosed* as a result of an arrangement between the NBA and Meta pursuant to which the NBA deliberately uses the Facebook Pixel. This alleged harm is closely related to the public disclosure of private facts analog.

118 F.4th at 542 (internal citations omitted). The D.C., Third, Sixth, Seventh, Ninth, and Eleventh Circuits, in accord with *Salazar*'s reasoning, have likewise each held that plaintiffs alleging violations of the VPPA necessarily have Article III standing. *See Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1339-41 (11th Cir. 2017) ("[W]e hold that a plaintiff such as Perry has satisfied the concreteness requirement of Article III standing, where the plaintiff alleges a violation of the VPPA for a wrongful disclosure."); *In re: Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) ("The purported injury here is clearly particularized, as each plaintiff complains about the disclosure of information relating to his or her online behavior. While perhaps 'intangible,' the harm is also concrete in the sense that it involves a clear *de facto* injury, *i.e.*, the unlawful disclosure of legally protected information."); *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014) (similar); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982-84

(9th Cir. 2017) (similar); *Paramount Glob.*, 133 F.4th at 647-48 (similar); *see also Pileggi v. Washington Newspaper Publ'g Co., LLC*, 146 F.4th 1219, 1226 (D.C. Cir. 2025) ("Ms. Pileggi has shown standing because the harm she alleges—having one's private video viewing history given to another without consent—is analogous to two types of privacy harms cognizable at common law[, intrusion upon seclusion and publicity of private life.]").  The Court should adopt the persuasive reasoning of these decisions and conclude that Plaintiffs have adequately alleged a concrete injury that satisfies Article III.

Notwithstanding the overwhelming precedent in Plaintiffs' favor, the Motion argues that Plaintiffs lack Article III standing because (1) Congress expressly permitted disclosure of PII to another business for marketing purposes under the VPPA; (2) business-to-business disclosures do not cause concrete harm; (3) Plaintiffs do not have a reasonable expectation of privacy; and (4) no video purchase information was disclosed. Motion, 3-13. None of these arguments have merit.

*First*, contrary to Defendant's assertion, Congress did not expressly permit disclosure of PII to another business for marketing purposes under the VPPA. Motion at 3-4. If it had, that language would appear in the statute. It does not. But Defendant disagrees, citing to a portion of a 1988 Senate Judiciary Report that refers to marketing falling within the gambit of "order fulfillment" and "request processing." Motion at 4 (citing S. Rep. No. 100-599, at 14 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342). But this language does not modify the plain language of the VPPA. Tellingly, Courts have unequivocally rejected the same argument Defendant now brings. *See Sterk v. Redbox Automated Retail, LLC*, 2013 WL 4451223, at *4-5 (N.D. Ill. Aug. 16, 2013) (rejecting this argument and stating it would "essentially rewrite the statute"), *aff'd*, 770 F.3d 618 (7th Cir. 2014); *see also Collins v. Toledo Blade*, 720 F. Supp. 3d 543, 554 (N.D. Ohio 2024) (stating that "Congress already addressed marketing in a separate subsection—Subsection

(D). If Congress intended to include 'marketing' in Subsection (E) where it discussed the 'ordinary course of business,' then it would have done so, and perhaps would not have also addressed 'marketing' in its own subsection"). This Court should reach the same conclusion.

*Second*, Defendant argues that its disclosure of Plaintiffs' PII to Meta, Google, HubSpot, Bazaarvoice, and Bounce Exchange is not actionable because the disclosure was from one business to another and, as such, there is a lack of publicity sufficient to show the intangible harms attendant to common law torts such as public disclosure of private facts necessary to establish an injury in fact. Motion at 5-8. In support of this argument, Defendant cites a number of Fair Debt Collection Practices Act ("FDCPA") cases involving disclosures to mail vendors. *See* Motion at 5-8. But as the Second Circuit has concluded, the analogy to mail vendor FDCPA cases is "inapt" in this context because it ignores "the nature of the companies involved, the intended and potential uses of the disclosed information, and the resulting enhanced disclosure risks." *Salazar*, 118 F. 4th at 544. Unlike the mail vendors in the cases cited by Defendant, the third-party recipients at issue in this case may use Plaintiffs' personally identifiable information for other purposes, including showing targeted ads and conducting other digital marketing. It is this potential use, and the resulting privacy harm to Plaintiffs, that led the Second Circuit to conclude that there is "little daylight between the nature of the harm [the plaintiff] alleges and the harm flowing from the public disclosure of private facts at common-law analog." *Id.* at 544. The D.C. Circuit recently agreed, noting that "Meta did not simply store [the plaintiff's] private information in a 'desk drawer.'" *Pileggi*, 146 F.4th at 1229 (quoting *TransUnion*, 594 U.S. at 434). This Court similarly should reject the mail vendor analogy and conclude, as other courts have, that a third party's use of personally identifiable information received by it from a defendant implicates the harms

recognized at common law and protected by the VPPA. *See Salazar*, 118 F. 4th at 544; *Pileggi*, 146 F.4th at 1230.

*Third*, Plaintiffs have a reasonable expectation of privacy in their personally identifiable information that Defendant disclosed to Meta, Google, HubSpot, Bounce Exchange, and Bazaarvoice. Indeed, as "Courts have explained that the VPPA was predicated on existing constitutional and substantive protections of the right to privacy." *Osheske v. Silver Cinemas Acquisition Co.*, 700 F. Supp. 3d 921, 926 n.4 (citing *Eichenberger*, 876 F.3d at 983 ("[T]he VPPA provision at issue here[] codifies a context-specific extension of the *substantive* right to privacy.")).

*Fourth*, Plaintiffs' allegations in the Complaint plainly show that video purchase information was disclosed. As an initial matter, Defendant's argument on this point appears to be limited to the Meta Pixel allegations because it is premised on the screenshots in the Complaint's Meta Pixel section being from the Checkout page, rather than the Purchase Complete page. *See* Motion at 1-13. As such, Defendant has waived any argument directed against the Google, HubSpot, Bazaarvoice, and Bounce Exchange tracking pixels because the screenshots in the Complaint attendant to each of those third parties were captured from the Purchase Complete page. *See* ¶¶ 116-117 (Google); ¶¶ 133-134 (HubSpot); ¶¶ 150-151 (Bazaarvoice); ¶¶ 163-164 (Bounce Exchange); s*ee generally Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 774 (5th Cir. 2024) (finding that a district court abused its discretion by considering new arguments not previously raised in the underlying motion).

In any event, liability under the VPPA is not premised on making a purchase. Instead, it is premised on the disclosure of "information which identifies a person as having *requested or obtained* specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(1) (emphasis added). Information identifying a person as having "requested" "specific

video materials" is PII under the statute. *See, e.g.*, *Archer v. NBCUniversal Media, LLC*, 2025 WL 2601509, at *4 (C.D. Cal. July 2, 2025) ("Plaintiffs properly alleged that Defendants disclosed Plaintiffs' personally identifiable information to Meta by transmitting their FIDs, video titles, and video URLs to Meta when a consumer added a video to their shopping cart.").[3]

Even if liability under the VPPA requires disclosure of a purchase (which it does not), Defendant's argument would still fail with respect to the disclosures to Meta. That the screenshots depicting transmissions to Meta were captured from the Website's Checkout page, rather than its Purchase Complete page, does not preclude Defendant's transmission of purchase information to Meta. Indeed, the Complaint alleges explicitly that "The Meta Pixel code systematically transmits to Meta the FID of each person with a Meta account who purchases prerecorded video material on its Website, *along with the identity of the prerecorded video material that the person purchased*." *See* ¶ 93 (emphasis added). Defendant apparently overlooks this allegation, which plainly states that the identities of the videos its customers "purchased" are sent to Meta.[4] *See id*.

Plaintiffs have Article III standing to assert their claims, and Defendant's Rule 12(b)(1) motion should be swiftly denied.

---

[3]    Defendant attaches the Declaration of Jeffrey Welch to its Motion to assert that the metadata shown in the Meta section of the Complaint is from a pre-purchase screen. *See* ECF No. 41-2. While liability under the VPPA does not depend on any purchase, Plaintiffs note that the Court may decline to consider Defendant's factual attack on jurisdiction at this stage of the litigation. *See, e.g.*, *Daily Wire, LLC v. United States Dep't of State*, 733 F. Supp. 3d 566, 584-85 (E.D. Tex. 2024).

[4]    Moreover, Defendant has admitted that it has enabled the "Purchase" event for the Meta Pixel on its website. *See* Ex. A, Defendant's Responses and Objections to Plaintiffs' Interrogatories, at 8.

**B.      The Court Should Deny Defendant's Rule 12(b)(6) Motion to Dismiss.**

    **1.      *Defendant May Not Raise New Arguments Under Rule 12(b)(6) that Were Available When It Filed its Motion to Dismiss the Prior Complaint.***

As an initial matter, Defendant is not permitted to raise new Rule 12(b)(6) arguments that were available when Defendant filed its prior motion to dismiss.

Courts in this Circuit have held that "[t]he filing of an amended complaint does not 'revive' the right of a defendant to file a successive Rule 12(b)(6) motion to dismiss on grounds that were *available but not raised* prior to the amended pleading." *Hernandez v. Casey*, 2017 WL 685679, at *3 (N.D. Tex. Jan. 12, 2017) (emphasis in original); *see also Stoffels ex rel. SBC Concession Plan v. SBC Commc'ns, Inc.*, 430 F. Supp. 2d 642, 647-48 (W.D. Tex. 2006) ("[T]he filling of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading."). These holdings are grounded in the plain text of Rule 12, which provides, in relevant part, that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2); *see also Inclusive Communities Project, Inc. v. United States Dep't of Treasury*, 2016 WL 6397643, at *8 (N.D. Tex. Oct. 28, 2016) (citing to Rule 12(g)(2) and determining that defendant could not properly raise new arguments to dismiss claim in amended complaint that were previously available). Moreover, the successive 12(b)(6) arguments are improper because they violate the law of the case doctrine, especially when "the arguments and facts regarding these issues are essentially identical." *See Physicians Wellness Grp., Inc. v. Mooni Ltd.*, No. 4:22-CV-597-BJ, 2023 WL 11959701, at *2 (N.D. Tex. Sept. 7, 2023).

In its current Motion, Defendant moves to dismiss on three independent grounds, all of which were available to Defendant, but not raised, when it filed its previous motion to dismiss: (1)

whether the information allegedly disclosed is PII under the VPPA; (2) whether the "ordinary course of business" exception applies; and (3) whether streaming falls within the VPPA. Motion at 14-20. With respect to the second and third grounds, there can be no doubt that these arguments could have been raised in the prior motion to dismiss, as they are not dependent on any of the new allegations in the Third Amended Complaint and are otherwise subject to the law of the case doctrine. As such, the Court should deny the Motion as to these grounds. As to the first ground, Defendant could have previously raised this argument as to Meta, since Plaintiffs' allegations concerning Meta did not substantively change in the Third Amended Complaint. *Compare* ECF No. 12 *with* ECF No. 35. Indeed, the Court has already found that "Plaintiffs sufficiently allege their Facebook IDs and the URLs of the video materials they requested or obtained from Defendant constitute PII within the meaning of the VPPA." ECF No. 26 at 10.

For these reasons, the Court should determine that Defendant is not permitted to argue that (1) the "ordinary course of business" exception applies; (2) streaming does not fall within the VPPA; and (3) as to Meta, the URLs of the video materials they requested or obtained from Defendant constitute PII within the meaning of the VPPA.

### 2.    *Plaintiffs Sufficiently Allege the Information Disclosed by Defendant Constitutes PII Within the Meaning of the VPPA.*

Defendant seeks to re-litigate whether the information it disclosed to third parties is PII under the VPPA.  That question has already been resolved by this Court. The Court previously determined that "Plaintiffs sufficiently allege . . . the URLs of the video materials they requested or obtained from Defendant constitute PII within the meaning of the VPPA." ECF No. 26 at 10. As such, Defendant cannot re-raise this argument. *See, e.g.*, *Hernandez*, 2017 WL 685679, at *3; *Physicians Wellness Grp.*, 2023 WL 11959701, at *2.

To the extent the Court does reconsider the question, Defendant's argument remains as meritless as before. The gravamen of Defendant's argument regarding personally identifiable information centers on its mistaken belief that the Meta-related screenshots captured from the Website's Checkout page somehow reflect a different transmission of information than what occurs on the Purchase Complete page. *See* Motion at 14-16. As a threshold matter, since the screenshots pertaining to the other third parties are from the Purchase Complete page (e.g., the post-purchase page), rather than the Checkout page, this argument does not apply to the disclosures to those entities. *See* ¶¶ 116-117 (Google), 134 (Hubspot), 151 (Bazaarvoice), 164 (Bounce Exchange) (depicting metadata transmissions from the Website's Purchase Complete page to each of these third parties); s*ee generally Georgia Firefighters' Pension Fund*, 99 F.4th at 774.

Notwithstanding the binding effect of Court's previous order under the law of the case doctrine, Defendant challenges whether the information disclosed to Meta constitutes personally identifiable information within the meaning of the VPPA based on two arguments: (1) the URL of the video materials Plaintiffs requested or obtained from Defendant cannot constitute PII within the meaning of the VPPA because no ordinary person could look at that URL in the metadata and possibly understand it; (2) the metadata at issue does not evidence that a specific video was purchased. Both of Defendant's arguments fail as a matter of law.

*First*, in Defendant's view, "no ordinary person could look at the same type of metadata string relied on by Plaintiffs here and possibly understand it – and thus it cannot be personally identifiable information (PII)." Motion at 15. As this Court previously noted, however, the "ordinary person" standard for interpreting the term personally identifiable information has *not* been adopted by the Fifth Circuit, and "[e]ven assuming the "ordinary person" standard applies here, courts have also readily found that a Facebook ID is a "unique identifier that is enough, on

its own to identify a person" for purposes of the VPPA." ECF No. 26 at 7-9. In response, Defendant shifts gears from focusing on whether the disclosures are personally identifying to whether the data contained in the disclosures identifies "specific video materials" within the meaning of the statutory definition of personally identifiable information. *See* 18 U.S.C. § 2710(a)(1).[5]

This Court and many others have properly rejected the argument that URLs identifying specific videos by name fail to identify "specific video materials" within the statutory definition of PII. *See, e.g.*, ECF No. 26 at 10 ("Plaintiffs sufficiently allege . . . the URLs of the video materials they requested or obtained from Defendant constitute PII within the meaning of the VPPA."); *see also id.* at 9 (collecting authorities). Indeed, Plaintiffs' allegations show that the metadata sent to Meta identifies the names of the video materials purchased by the consumers. As shown in the Complaint, when a customer adds the "Onnit 6 – HydroCore (Digital)" video to their "Bag," the associated metadata sent to Meta includes the text "six-hydrocore." ¶¶ 95-96. By Defendant's own admission, "one does not need to be a computer science major to understand" that the metadata text "six-hydrocore" identifies the "Onnit 6 – HydroCore (Digital)" video. *See* Motion at 1.

---

[5] In a footnote, Defendant briefly argues that the email address pictured in the Complaint in the disclosures to Google, HubSpot, Bazaarvoice, and Bounce Exchange is not personally identifying. Motion at 15 n.11. Arguments raised only in a footnote are waived. *See, e.g.*, *Sable Networks, Inc. v. Cloudflare, Inc.*, No. 6:21-cv-00261-ADA, 2024 WL 718690, at *2 (W.D. Tex. Feb. 5, 2024). Nevertheless, the point is without merit—email addresses are personally identifying within the meaning of the statute. *See United States v. Hastie*, 854 F.3d 1298, 1303 (11th Cir. 2017) (interpreting an analogous definition in the Drivers Privacy Protection Act and stating "[e]mail addresses fall within the ordinary meaning of 'information that identifies an individual.'"); *Aldana v. GameStop, Inc.*, No. 22-CV-7063-LTS, 2024 WL 708589, at *7 (S.D.N.Y. Feb. 21, 2024) (finding that email addresses are personally identifying under the VPPA).

Defendant's reliance on *Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025) is misplaced. There, the Court determined that "[i]t is implausible that an ordinary person would look at the phrase "title% 22% 3A% 22-% E2% 96% B7% 20The% 20Roast% 20of% - 20Ric% 20Flair" . . . and understand it to be a video title." *Solomon*, 136 F.4th at 54. But this stands in stark contrast to the Third and Ninth Circuit's iteration of the test and the facts of this case because the video title in the metadata on Defendant's Website states "six-hydrocore" with respect to the "Onnit 6 – HydroCore" video. ¶¶ 94-95. There are no intervening characters and symbols to obfuscate the title here, unlike in *Solomon*. Even under the "ordinary person" test applied by the Second Circuit in *Solomon*, it is certainly plausible that an ordinary person could understand the phrase "six-hydrocore" to refer to the "Onnit 6 – HydroCore" video on Defendant's Website "with little or no extra effort." *Id.*[6] The alleged disclosures to Meta identify "specific video materials" within the meaning of the VPPA. *See* 18 U.S.C. § 2710(a)(1).

Defendant does not appear to challenge whether the disclosures to Google, HubSpot, Bazaarvoice, Bounce Exchange identify "specific video materials" within the meaning of the statute. For the avoidance of doubt, Plaintiffs also allege—and include images showing the

---

[6]    Defendant also fails to state in its Motion that the Second Circuit's holding in *Solomon* was dependent on its finding that the plaintiff did not "plausibly allege that an ordinary person could identify Solomon through her FID." *Solomon*, 136 F.4th at 54. Yet, in this case, the Court has already found that "Plaintiffs sufficiently allege their Facebook IDs and the URLs of the video materials they requested or obtained from Defendant constitute PII within the meaning of the VPPA." ECF No. 26 at 10; *see also Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 261 (S.D.N.Y. 2025) (decided after *Solomon* and stating, "Courts have generally recognized that Facebook IDs constitute PII under the VPPA.") (citing *Lamb v. Forbes Media LLC*, 2023 WL 6318033, at *10 (S.D.N.Y. Sept. 28, 2023) (collecting cases that hold the same)). Separately, Defendant's position is not supported by *Hughes v. NFL*, 2025 WL 1720295 (2d Cir. June 20, 2025), which is a summary decision without binding effect even in the Second Circuit, as that decision only addressed whether a Facebook ID is PII under the VPPA, not whether the title of a video in metadata constitutes "specific video materials" within the statutory definition of PII. *Id.*, at *3.

supporting metadata—that each of those companies' tracking tools deployed on the Website transmits the tile of the specific video materials purchased by the consumer. ¶¶ 116-117 (Google); ¶¶ 133-134 (HubSpot); ¶¶ 150-151 (Bazaarvoice); ¶¶ 163-164 (Bounce Exchange).  For example, the metadata Defendant sends to Bazaarvoice when a person purchases the "Onnit 6 – Hydrocore" video includes the text "productid:Onnit_6_Hydrocore."  ¶¶ 150-151.[7]  It would be hard to argue that "productid:Onnit_6_Hydrocore" does not identify the video product entitled "Onnit 6 – Hydrocore"—and Defendant apparently does not attempt to do so.

*Second*, Defendant's argument is premised on arguing that the metadata transmitted to Meta does not show a video was *purchased*.  Again, this argument apparently only applies to Meta, since the screenshots concerning the other tracking tools are from the post-purchase Purchase Complete page, rather than the pre-purchase Checkout Page.  *Compare* ¶¶ 94-95 *with* ¶¶ 116-117, ¶¶ 133-134, ¶¶ 150-151, ¶¶ 163-164.  In any case, the argument fails for at least two reasons.  First, as a matter of law, liability under the VPPA does not depend on disclosing that a video was "purchased." *See* 18 U.S.C. 2710. Instead, the VPPA prohibits disclosing "personally identifiable information" showing that a person "requested or obtained" prerecorded video materials.  18 U.S.C. § 2710(a)(3).  As a result, whether a person "purchased" a video is not necessary for liability—the question is whether the fact that they "requested or obtained" the video was disclosed.  *Id.*; *see, e.g., Archer,* 2025 WL 2601509 at *4 (denying a motion to dismiss where the plaintiff alleged that the defendant disclosed "FIDs, video titles, and video URLs to Meta when a consumer added a video to their shopping cart.").  Second, as noted above, Plaintiffs *do* allege that

---

[7] These screenshots also show that the metadata transmissions to Bazaarvoice include the phrase "sku:Onnit_6_Hydrocore." *Id*.  "[S]ku" is an abbreviation for "stock keeping unit," which is a common commercial term meaning a "unique number assigned to each item stocked (i.e. a product with a particular size, color, design, etc.) for purposes of inventory and tracking."  *MZ Wallace Inc. v. Fuller*, No. 18-CV-2265(DLC), 2018 WL 6715489, at *3 (S.D.N.Y. Dec. 20, 2018).

Defendant discloses the "identity of the prerecorded video material that the person purchased" to Meta. ¶ 93.  For these reasons, the Court should deny Defendant's motion to dismiss.

### 3. *The "Ordinary Course of Business" Exception Does Not Apply.*

Defendant's argument that its disclosure of Plaintiffs' PII to Meta, Google, HubSpot, Bounce Exchange, and Bazaarvoice without Plaintiffs' informed written consent is incident to the "ordinary course of business" under the VPPA's safe harbor provision, Motion at 16 (citing 18 U.S.C. § 2710(b)(2)(E)), fails as a matter of law. Courts have repeatedly rejected this argument, and this Court should as well.

It is black letter law that "[s]tatutory interpretation begins with the statute's plain language." *Carder v. Continental Airlines, Inc.*, 636 F.3d 172, 175 (5th Cir. 2011). Section 2710(b)(2)(E) of the VPPA permits a video tape service provider to disclose personally identifiable information to "any person if the disclosure is incident to the ordinary course of business of the video tape service provider[.]" 18 U.S.C. § 2710(b)(2)(E). The VPPA defines the term "ordinary course of business" to mean "only debt collection activities, order fulfillment, request processing, and the transfer of ownership." 18 U.S.C. § 2710(a)(2). Notably, the definition of the term "ordinary course of business" does not include "marketing" or "advertising" activities. *See id.* On this basis alone, courts have rejected arguments like that advanced by Defendant. *See, e.g.*, *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24, 32 (D. Mass. 2024) ("The alleged uses of the information here – "marketing, advertising, and analytics – do not fall within the ["ordinary course of business] exception's narrow list of permissible uses."); *Rancourt v. Meredith Corp.*, 2024 WL 381344, at *17 (D. Mass. Feb. 1, 2024) (holding that disclosure of PII "to companies such as Google, Facebook, and Salesforce in order to better target ads" does not fall within the "ordinary course of business exception); *Markels v. AARP*, 689 F. Supp. 3d

722, 729 (N.D. Cal. 2023) (similar); *Louth v. NFL Enters. LLC*, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022) (similar).

Despite the plain language of the VPPA, Defendant urges the Court to read the "ordinary course of business" exception to include disclosures for marketing purposes. Motion at 16. In support of this position, Defendant cites a portion of a 1988 Senate Judiciary Report. Motion at 4 (citing S. Rep. No. 100-599, at 14 (1988)). But courts considering this portion of the Senate Judiciary Report have rejected the argument that the VPPA's definition of the "ordinary course of business" exception includes marketing activities. For example, in *Sterk v. Redbox Automated Retail, LLC*, 2013 WL 4451223, at *4-5 (N.D. Ill. Aug. 16, 2013), *aff'd*, 770 F.3d 618 (7th Cir. 2014), the court found "no persuasive reason to effectively rewrite a federal statute based on an ambiguous committee report." *Sterk*, 770 F.3d at 624 (internal quotation marks omitted). The Sixth Circuit also rejected this argument in *Collins*, 720 F. Supp. 3d at 554, stating that "Congress already addressed marketing in a separate subsection—Subsection (D). If Congress intended to include 'marketing' in Subsection (E) where it discussed the 'ordinary course of business,' then it would have done so, and perhaps would not have also addressed 'marketing' in its own subsection." *Collins*, 720 F. Supp. 3d at 554-55. The Court should similarly determine that the "ordinary course of business" exception to liability under the VPPA does not apply here.[8]

### 4.    *Streaming Prerecorded Videos Online Falls Within the VPPA.*

The VPPA's purpose is "to preserve personal privacy with respect to the rental, purchase, or delivery of video tapes or similar audio visual materials," and to ensure "that information

---

[8]    If the Court does not reject Defendant's argument, it should, in any event, refrain from determining that the "ordinary course of business" exception applies until later in this litigation. *See, e.g.*, *Ade v. Viki, Inc.*, 2024 WL 1880153, at *3 (N.D. Cal. Mar. 28, 2024) ("The scope of the ordinary course of business exception and whether Viki's use of the Pixel falls within the exception are issues better addressed on a fuller record at summary judgment.").

collected for one purpose may not be used for a different purpose without the individual's consent." *Salazar*, 118 F.4th at 545. As countless VPPA decisions issued in the past two decades demonstrate, these purposes "remain equally applicable in the online context." *Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 258 (S.D.N.Y. 2025); *see also, e.g.*, *Salazar*, 118 F.4th at 536 (VPPA applicable to streaming online videos). "If new types of digital information fall within the purview of the statute, they need not have been considered or even invented at the time the VPPA was passed in order to be covered." *Id.* Indeed, "the fact that [a statute] has been applied in situations not expressly anticipated by Congress . . . simply demonstrates [the] breadth of legislative command." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 674 (2020) (quotation marks and citation omitted). Countless courts have applied the VPPA to online video viewing. *See, e.g.*, *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 798–99 (N.D. Cal. 2019); *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 852 (N.D. Cal. 2022); *In re Hulu Priv. Litig.*, No. C-11-03764 LB, 2012 WL 3282960 at *6 (N.D. Cal. Aug. 10, 2012); *Jackson v. Fandom, Inc.*, No. 22-cv-04423-JST, 2023 WL 4670285 at *3 (N.D. Cal. July 20, 2023); *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023). For these reasons, Defendant's argument that the VPPA does not extend to viewing online videos has no merit.

## **CONCLUSION**

For the reasons stated herein, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss in its entirety and, in the alternative, provide leave to amend if the Court grants the motion.

Dated: October 10, 2025

Respectfully submitted,

**HEDIN LLP**

*/s/ Tyler K. Somes*
Tyler K. Somes
District of Columbia Bar No. 90013925
HEDIN LLP
1100 15th Street NW, Ste 04-108
Washington, D.C. 20005
Telephone:    (202) 900-3332
Facsimile:     (305) 200-8801
tsomes@hedinllp.com

Frank S. Hedin
Florida Bar No. 109698
Elliot O. Jackson
Florida Bar No. 1034536
HEDIN LLP
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone:     (305) 357-2107
Facsimile:      (305) 200-8801
fhedin@hedinllp.com
ejackson@hedinllp.com

AND

Matthew J. Langley
Florida Bar No. 97331
ALMEIDA LAW GROUP LLC
849 W. Webster Avenue
Chicago, Illinois 60614
Telephone:     (312) 576-3024
matt@almeidalawgroup.com

*Counsel for Plaintiffs and Putative Class*

21

**CERTIFICATE OF SERVICE**

I hereby certify that pursuant to the Federal Rules of Civil Procedure 5, on this 10th day of October, 2025, I electronically filed the attached document using the ECF System for filing, which will serve a copy on counsel of record for all parties.

_/s/ Tyler K. Somes_
Tyler K. Somes
