IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **ERIC MACALPINE; and BRIAN HICKERSON** individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>v.<br><br>**ONNIT LABS, INC.,**<br><br>   Defendant. | Case No. 1:24-cv-00933-DII |

# DEFENDANT ONNIT LABS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT

Adam Bowser (VA Bar No. 76523)
ArentFox Schiff LLP
1717 K Street, N.W.
Washington, D.C. 20006
Ph: 202.857.6000
Fax: 202.857.6395
adam.bowser@afslaw.com


Counsel for Defendant
*Onnit Labs, Inc.*

October 31, 2025

I. **PLAINTIFFS LACK STANDING BECAUSE THEY HAVE NOT SUFFERED A CONCRETE INJURY REMOTELY CLOSE TO A COMMON LAW ANALOGUE**

    A. **The Complaint Facially Lacks Any Well-Pled Allegation Of Actual Harm**

Onnit established that Plaintiffs fail to allege any harm sufficiently close in kind to an injury recognized at common law, as required by the Supreme Court. *See TransUnion LLC v. Ramirez,* 594 U.S. 413 (2021); Mem. at 2-13. This is because (1) Congress *did not* elevate business-to-business disclosures made in the ordinary course of business as a cognizable injury under the VPPA, (2) such private disclosures are clearly different *in kind* than the common law claim of *public* disclosure of *private* facts, and (3) there is no reasonable expectation of privacy in your shopping activity on a commercial website on the public Internet, let alone in anodyne workout content that tens of millions of Americans engage in everyday in public gyms. *Id.*

Plaintiffs, for their part, do not even attempt to argue that they would suffer *any* reputational injury if *anyone* learned about the video content that they allegedly purchased from Onnit. That *alone* should settle it. It is Plaintiffs' burden to establish that the harm *they* "claim[] to have suffered" has a "close relationship" to "a common-law analog." *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 825 (5th Cir. 2022). And as the Court of Appeals reiterated, the harm itself allegedly experienced by a plaintiff has to be "similar 'in kind'" to a specific common law claim. *Id.* As Onnit established, the tort of public disclosure of private facts would require both *publicity* being given to *private* facts, *and* the publication would be "highly offensive to a reasonable person." Mem. at 5 (citing *Lowe v. Hearst Commc'ns, Inc.,* 414 F. Supp. 2d 669, 673 (W.D. Tex. 2006), *aff'd,* 487 F.3d 246 (5th Cir. 2007)).

Understandably, Plaintiffs make no attempt to establish how an allegedly *private* disclosure of activity occurring on a *public* website is similar in kind to this (or any) tort. Of course, that's an inversion of a public disclosure of a private fact – not similar *in kind*. Nor do

1

they allege that Plaintiffs were *marginally* offended, let alone highly so, **at any point** in their Complaint or their Opposition.  Instead, Plaintiffs first fall back to arguing Onnit's alleged "conduct invaded Plaintiffs' statutorily conferred interest in keeping their personally identifying information private." Opp. at 6.  But that position also inverts the required standing analysis – as one of the central takeaways of *TransUnion* is that courts should not "treat an injury as 'concrete' for Article III purposes based only Congress's say-so." *TransUnion LLC*, 594 U.S. at 426; *see also Perez*, 45 F.4th at 822.

Perhaps more tellingly, "Plaintiffs further allege that their personally identifiable information has real market value, ¶¶ 38-49, and they place monetary value on their privacy, ¶¶ 50-54." Opp. at 6.  In other words, this is really about money, and not a genuine "privacy" dispute.  But as to this distinct theory of "harm," however, the cited allegations are entirely conclusory, template allegations that have no apparent relevance to this case or Plaintiffs.  *See, e.g.*, Compl. ¶ 48-49 ("Disclosures like Defendant's are particularly dangerous to the elderly" and the "elderly often are the deliberate targets of fraudulent telemarketers").[1]  Simply put, there are no well-pled allegations of harm *as to Plaintiffs* in these, or any other, sections of the Complaint, and Plaintiffs further have not even attempted to tie any of these non-sequiturs to a close common-law analogue to meet their burden here.  *See Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025) (noting that *TransUnion* rejected "a one-size-fits-all approach" to

---

[1]  Onnit's kettlebell workout would be particularly dangerous to the elderly, but not the metadata flows at issue.  Take Google for example.  What the Complaint shows is that they are using Google Chrome to visit the Onnit website.  *See, e.g.*, Compl. ¶ 94.  Thus, *independent* of anything Onnit does, Google already knows what webpages a Google Chrome user is visiting.  Plaintiffs are effectively complaining about a game of three person whisper-down-the-alley, where *they first disclosed* to Party B (Google) the information at issue.  This is one reason why these website "privacy" claims are fundamentally meritless under the Third Party Doctrine, which Plaintiffs fail to address in their Opposition.  *See* Mem. at 8-11.

2

standing, rejecting a "generalized 'invasion-of-privacy' theory," and holding that "a plaintiff's individual circumstances" must be analyzed).

Indeed, had they tried, they would have confronted the fact that courts consistently reject the same theories of economic "harm" or "loss" as a basis for standing. For example, the Southern District of Texas recently held in a comparable data breach class action that:

> "Plaintiffs do not explain how they were 'deprived' of the economic value of their personal information simply because their unspecified personal information was purportedly collected by a third party. … Even if the Court were to find that personal information has an inherent value and the deprivation of such value is an injury sufficient to confer standing, Plaintiff has failed to allege facts indicating how the value of his personal information has decreased as a result of the Data Breach. The same is true here. Because Plaintiffs' claims are "dependent on entirely speculative, future actions of an unknown third-party[,]" they are insufficient to confer Article III standing. Thus, [Plaintiffs] cannot establish standing on this basis.

*Logan v. Marker Grp., Inc.*, No. 4:22-CV-00174, 2024 WL 3489208, at *7 (S.D. Tex. July 18, 2024) (internal citations omitted); *see also Hulse v. Acadian Ambulance Serv. Inc.*, No. 6:24-CV-01011, 2025 WL 1453847, at *8 (W.D. La. May 19, 2025) ("absent any factual allegations showing how Plaintiffs might quantify the diminution in value of personal information, the Court finds that this claim is too speculative to constitute a concrete injury").

At bottom, every allegation in the Complaint Plaintiffs rely on here is wholly conclusory and insufficient as a matter of law to establish that Plaintiffs themselves have suffered any injury. Plaintiffs have failed to meet their burden to establish they have standing, and the Complaint should be dismissed on this basis alone.

### B. Plaintiffs' Reliance On Pre-*TransUnion* Authority And Out-of-Circuit Cases In Conflict With *Perez* Misses The Mark

Onnit demonstrated that after the Supreme Court's *TransUnion* decision, four Courts of Appeals specifically addressed the same fact pattern here, and held that a private, business-to-business disclosure of information allegedly in violation of a statute was insufficient to confer

3

standing. Mem. at 5-8. The Seventh and Eleventh Circuits held that if any element essential to liability at common law is missing, then no concrete injury can result. *Id.* Consistent with the Fifth Circuit's *Perez* decision, the Tenth and Third Circuits similarly held that consumers do not suffer a concrete injury in such circumstances, because the harm, if any, would be different in kind to the closest common law analogue – the *public* disclosure of private facts. *Id.*

Notably, Plaintiffs do not even mention *Perez* and its binding analytical framework called for here, implicitly conceding it's fatal to their case. Instead, they cite multiple *pre-TransUnion* VPPA cases, including from the Third, Seventh, and Eleventh Circuits. Opp. at 7. These decisions, however, simply cannot be squared with the *post-TransUnion* decisions from the same courts briefed by Onnit, and Plaintiffs don't try to argue otherwise. Plaintiffs also cite more recent decisions from the D.C. Circuit and Sixth Circuit, Opp. at 8, but fail to inform the Court that defendants in those cases didn't even challenge the plaintiffs' standing. *See Pileggi v. Washington Newspaper Publ'g Co., LLC*, 146 F.4th 1219, 1226 (D.C. Cir. 2025) ("Washington Newspaper does not contest her standing on appeal."); *Salazar v. Paramount Glob.*, 133 F.4th 642, 646 (6th Cir. 2025) ("Paramount abandons its challenge to Salazar's standing.").

In fact, while Plaintiffs cite the Ninth Circuit's earlier VPPA decision in *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017), Opp. at 7-8, they also neglect to inform the Court that the Ninth Circuit more recently called into question *Eichenberger*'s continuing validity. *See Popa,* 153 F.4th at 794 ("But even though our analysis in *Eichenberger* and *In re Facebook* might have arguably offered at the time some support for the position that Popa now advances, that analysis finds no support in *TransUnion*" and further stating that "we might analyze [the VPPA] differently today, especially after the Supreme Court's decision in *TransUnion*."). Indeed, *Popa* is instructive for multiple reasons – none of them helpful for Plaintiffs. First, the

4

court specifically discounted any of its own decisions, or those like the D.C. or Sixth Circuits above, where the issue of standing was not squarely presented by the parties. *Id.* at 793 ("issue that was not clearly presented are not entitled to the same weight as carefully reasoned analysis of the issue" and "drive-by jurisdictional rulings lack precedential force.").[2]

Second, the court directly confronted the same alleged fact pattern here, *i.e.*, whether allegations of a website visitor's shopping activity on a public website being sent to a third party was a "harm" sufficient to confer standing. *Id.* at 786. The Ninth Circuit started by "[r]ecognizing that *TransUnion* contemplates a standing inquiry particularized to a plaintiff's circumstances and benchmarked to a specific tort," and "conclude[d] that Popa has not met her burden to demonstrate that she has standing." *Id.* at 791. That was because the same type of alleged monitoring and data sharing allegedly at issue here was not "remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id.* Rather, "the monitoring of Popa's interactions with PSP's website seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id.* Of course, that too was always the case for the cashier and fellow patrons at one's local Blockbuster in the 1980s – third parties could always see what

---

[2]     Oddly, the *only* case Plaintiffs cite for the proposition that they somehow had a reasonable expectation of privacy while shopping on a public website also does not address standing at all. Opp. at 10 (citing *Osheske v. Silver Cinemas Acquisition Co.*, 700 F. Supp. 3d 921, 926 n.4). Rather, the court found that purchasing movie tickets online, with that purchase information going to Facebook, "was patently inconsistent with the both the plain language and legislative history of the VPPA itself." *Id.* at 922. That hardly supports Plaintiffs here. In any case, Plaintiffs have no response to the multiple Supreme Court and appellate decisions, including *United States v. Weast*, 811 F.3d 743, 747 (5th Cir. 2016) holding that Internet users have no reasonable expectation of privacy under the Third Party Doctrine. Mem. at 8-10. It would be entirely illogical if the government can get one's online video history without a warrant because there is no reasonable expectation of privacy, but somehow a consumer visiting a commercial website while logged into Facebook is where the expectation is reasonable.

prerecorded video cassette tapes or similar audio visual materials someone was renting. "Congress's say-so" doesn't magically convert this into a highly offensive injury.[3]

That leaves only Plaintiffs' reliance on the Second Circuit's *Salazar* decision. Opp. at 9 (citing *Salazar v. NBA*, 118 F.4th 533, 544 (2d Cir. 2024). But focus exactly on what Plaintiffs are claiming is their "injury": "the third-party recipients at issue in this case **may use** Plaintiffs' personally identifiable information for other purposes, including showing targeted ads and conducting other digital marketing. It is ***this* potential use**, and the resulting privacy harm to Plaintiffs, that" is Plaintiffs' claimed injury. Opp. at 9 (emphasis added). While it's difficult to see how the Second Circuit's reasoning can be squared with *TransUnion*, which itself expressly rejected the theory that "a risk of future harm could supply the basis for a plaintiff's standing,"[4] *Salazar* certainly cannot be reconciled with the Fifth Circuit's *Perez* decision either. Indeed, as

---

[3]   When one actually thinks about what the VPPA ostensibly does, and does not, cover, one would have to conclude that its (mis)application to *some* online content would produce absurd results. For example, like movie tickets purchased online, courts consistently hold that live, streamed content is not protected under the VPPA. *See, e.g., Louth v. NFL Enterprises LLC*, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022); *Walker v. Meta Platforms, Inc.*, No. 22-CV-02442-JST, 2023 WL 3607282, at *6 (N.D. Cal. Mar. 3, 2023) (holding Facebook Live video content is not within ambit VPPA); *Stark v. Patreon, Inc.*, 635 F.Supp.3d 841, 851 (N.D. Cal. Oct. 13, 2022). Apply this to Onnit here. You could purchase a kettlebell, and information concerning that purchase could be freely disclosed to any third party. Sharing that someone viewed a magazine with the *same* kettlebell workout routine, or the *same* kettlebell training workout streamed *live* through Onnit's site – no problem. That someone watched a live *pornographic* video wouldn't be protected under the VPPA. But somehow an allegation that a prerecorded kettlebell training video is disclosed to a vendor is crossing the line? Does the fact that content is *prerecorded* cause the "harm"? Of course not. The Supreme Court has found similarly underinclusive speech regulations to be unconstitutional. *See, e.g., Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 801–02 (2011) ("California has singled out the purveyors of video games for disfavored treatment—at least when compared to booksellers, cartoonists, and movie producers—and has given no persuasive reason why."). But the Court need not address these constitutional issues here because Plaintiffs do not allege they suffered any actual harm.

[4]   *TransUnion*, 594 U.S. at 438; *see also Ellis v. Cargill Meat Solutions*, 2024 WL 4692024, *3 (5th Cir. Nov. 6, 2024) ("continued risk" of misuse of data insufficient to confer standing); *United States Dep't of Def. v. Am. Fed'n of Gov't Emps.*, No. 6:25-CV-00119-ADA, 2025 WL 2058374, at *5 (W.D. Tex. July 23, 2025) (same).

the Court of Appeals held, "if a risk hasn't materialized, the plaintiff hasn't yet been injured… A plaintiff can sue for damages if the risk materializes or causes a separate injury-in-fact … [b]ut those are suits based on those injuries, not the risk itself."

In the final analysis, the only "harm" Plaintiffs actually raise in their Opposition is not even a harm at all.  It's the *possibility* of the future use of data, which admittedly has not materialized.  Plaintiffs' attempt to backfill the lack of any well-pled allegations of injury in their Complaint directly conflicts with *TransUnion* and *Perez*, and the Complaint should be dismissed.

### C.      Plaintiffs Completely Fail To Meet Their Burden Of Proof

The Fifth Circuit has consistently held that when a defendant raises a factual challenge to standing under Federal Rule of Civil Procedure 12(b)(1), "a plaintiff '***must* prove** the existence of subject-matter jurisdiction **by a preponderance of the evidence**" and is "**obliged to submit facts through some evidentiary method to sustain his burden of proof**." *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (quoting *Irwin v. Veterans Admin.,* 874 F.2d 1092, 1096 (5th Cir.1989)) (emphasis added); *see also Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  Here too, Plaintiffs do not even attempt to meet their burden to counter the sworn declaration of Jeffrey Welch with admissible evidence. *See* ECF No. 41-2.  As Mr. Welch demonstrated, the **exact metadata** Plaintiffs falsely allege is a disclosure of a video purchase is present when a **non-video product** is in the shopping cart, conclusively establishing that Plaintiffs simply do not understand the metadata that underlies their latest Complaint.  Plaintiffs failed to address this, let alone with competent evidence.  Based on *Superior MRI*, Plaintiffs must be deemed to have conceded this factual challenge, and the Complaint should be dismissed with prejudice.  *See Russell v. Choicepoint Servs., Inc.*, 302 F. Supp. 2d 654, 670 (E.D. La. 2004)  (dismissing complaint with prejudice because "plaintiffs

have omitted any evidence indicating that their injuries are actual or imminent.").

## II.    PLAINTIFFS' NEW METADATA THEORY HAS BEEN EXPLICITLY REJECTED AND FAILS TO STATE A CLAIM

Onnit previously established that Plaintiffs' latest Complaint not only materially changed their allegations and theory as to what Onnit was allegedly disclosing, but did so in a way that was ultimately self-defeating.  Mem. at 13-20.  That is, Plaintiffs' new screenshots added to the Complaint make it facially obvious that "the URLs of the webpages where consumers watched or purchased prerecorded videos from Defendant" are ***not*** being disclosed, under any reasonable interpretation of what the term "URL" means.[5]  ECF No. 26 at 8.  In fact, even under Plaintiffs' misunderstanding of what this metadata signifies, the *exact* metadata appears both *before* and after a website visitor makes a purchase – if at all – making it logically impossible that *any of* this data can disclose whether someone has in fact purchased a video from Onnit.  Mem. at 15.

In response, Plaintiffs make several meritless arguments and mischaracterizations of their own allegations and Onnit's positions. Initially, Plaintiffs' assertion that Onnit somehow waived the ability to challenge Plaintiffs' new metadata theory and allegations is baseless.  Opp. at 12.  That's because Rule 12(g) is not implicated where "Plaintiff's amended complaint alleged 'significant additional facts.'" *Hernandez v. Casey*, No. 3:16-CV-452-M-BH, 2017 WL 685679, at *3 (N.D. Tex. Jan. 12, 2017).  Relevant here, Plaintiffs' prior allegations, *and* the basis of the Court's order, were that the specific "URLs of the video material they requested or obtained from Defendant constitute PII."  ECF No. 26 at 10.  Plaintiffs further alleged that Onnit sold DVDs, and the Plaintiffs "purchased prerecorded video material from Defendant *by requesting*

---

[5]    Shortly stated, a URL is the specific address of the website one can enter into a browser to visit a specific webpage.  *See* https://www.merriam-webster.com/dictionary/URL ("our site's *URL* is http://www.Merriam-Webster.com").

8

*and paying* for such material … and by providing his … home address *for shipment of such material*." ECF No. 12, ¶¶ 10, 66 (emphasis added).[6] The only fair reading of these allegations is that Onnit was disclosing the URLs of the webpages where Plaintiffs purchased prerecorded video *material*, and doing so in a way that would allow any ordinary person to easily connect these dots.  Indeed, that was expressly what Plaintiffs previously alleged.  *Id.* ¶ 70 ( "any **ordinary person** could learn the identity of the person … and the specific prerecorded video material that the person purchased (and **thus requested** and obtained).") (emphasis added).

Plaintiffs' new theory and the non-conclusory allegations in support of it, by contrast, hinge on (1) scrambled URL *fragments*[7] within inscrutable and distinct "Request URL" metadata exchanges, (2) that appear both *before and* after any possible checkout, (3) of the Hydrocore digital download (not a *material* DVD), (4) associated with an email address – not a FID – that indisputably does not personally identify any individual, (5) which are allegedly shared with other vendors for internal website analytics purposes, and (6) where the screenshots show that the individual is expressly agreeing to Onnit's Privacy Policy before any potential checkout.  Compl. ¶¶ 94; Mem. at 14-16.  These are unquestionably significant additional facts and a material change to Plaintiffs' prior theory, entitling Onnit to seek dismissal again.

Next, Plaintiffs assert that "[b]y Defendant's own admission, 'one does not need to be a computer science major to understand' that the metadata text "six-hydrocore" identifies the 'Onnit 6 – HydroCore (Digital) video."  Opp. at 15.  But Onnit "admitted" the **exact opposite**, as

---

[6]   Plaintiffs' argument that someone "requests" something by simply putting it in a online shopping cart is not only objectively meritless, it conflicts with their own allegations.

[7]   To put a finer point on it, these are not even "URLs within a URL," because even if one could look at 20+ lines of code, *see, e.g.,* Compl. ¶ 134, and have the foggiest of ideas of what's occurring there, that person could still not type "3DOnnit%2B6%2B-%2BHydroCore%2B" into any web browser and get to *any* Onnit webpage, let alone one that identifies a specific video.

9

Onnit sold a physical "HydroCore Bag" and the snippet of metadata Plaintiffs rely on – ""%2Fsix-hydrocore% 2F&hard_2…" – would "not plausibly even identify that one is viewing the webpage of the Hydrocore video, let alone purchasing it, rather than the distinct **Hydrocore product**." Mem. at 15-16 (citing Compl. ¶ 164, emphasis in original). Plaintiffs similarly mischaracterize Onnit's argument by stating that "Defendant does not appear to challenge" the alleged disclosures to the newly identified vendors. Opp. at 16. But of course Onnit did. Mem. at 12, 15. The incomprehensible nature of the metadata at issue is systemic to their entire claim, regardless of vendor. And independently, the "checkout" references Plaintiffs rely on transparently occur whether someone has checked out *or not* – meaning this "metadata signal" logically cannot signify that anyone has in fact purchased anything, even if they have.

Plaintiffs also make no attempt to rebut that the plain language of the VPPA simply does not support a construction that would encompass *immaterial*, streamed content, but simply point to more "drive-by" rulings where the issue is not challenged by the defendant under the plain language of the statute or in the context of comprehensive online privacy laws. Opp. at 20.

Finally, Plaintiffs attempt to distinguish the Second Circuit's *Solomon* decision by claiming that "20The% 20Roast% 20of% - 20Ric% 20Flair" metadata fragments at issue there somehow stand "in stark contrast" to the metadata fragments at issue here. Opp. at 16. This is not a serious argument, as there is no daylight between the metadata at issue. *Cf.* Compl. ¶ 135 ("3DOnnit%2B6%2B-%2BHydroCore%2B"). The Court can, and should, easily dismiss this case with prejudice for the same reasons.

## CONCLUSION

For the foregoing reasons, Onnit respectfully requests that this Court grant its Motion and dismiss Plaintiff's Third Amended Complaint with prejudice.

10

Dated: October 31, 2025

Respectfully Submitted,
**ARENTFOX SCHIFF LLP**

By: *Adam Bowser*

Adam Bowser (VA Bar No. 1644196)
ArentFox Schiff LLP
1717 K Street, N.W.
Washington, D.C. 20006
Phone: 202.857.6000
Fax: 202.857.6395
adam.bowser@afslaw.com

*Counsel for Defendant,
Onnit Labs, Inc.*

11

**CERTIFICATE OF SERVICE**

      I hereby certify that pursuant to the Federal Rules of Civil Procedure 5, this 31st day of October 2025 I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

    Tyler K. Somes (DC Bar No. 90013925)
    HEDIN LLP
    1100 15th Street NW, Suite 04-108
    Washington, D.C. 20005
    Phone: 202.900.3332
    Fax: 305.200.8801
    tsomes@hedinllp.com

    Frank S. Hedin (FL. Bar No. 109698)
    Elliott O. Jackson (FL. Bar No. 1034536)
    HEDIN LLP
    1395 Brickell Ave., Suite 610
    Miami, Florida 33131-3302
    Phone: 305.357.2107
    Fax: 305.200.8801
    fhedin@hedinllp.com
    ejackson@hedinllp.com

    Matthew J. Langley (FL Bar No. 97331)
    ALMEIDA LAW GROUP LLC
    849 W. Webster Avenue
    Chicago, Illinois 60614
    Phone: 312.576.3024
    matt@almeidalawgroup.com

                                                                                                 Adam Bowser