IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ERIC MACALPINE and BRIAN HICKERSON, individually and on behalf of all others similarly situated, | § § § § | No. 1:24-cv-00933-DAE |
| *Plaintiffs,* | § § § | |
| vs. | § § | |
| ONNIT LABS, INC., | § § | |
| *Defendant.* | § | |

<u>ORDER DENYING DEFENDANT'S MOTION TO DISMISS</u>

Before the Court is Defendant Onnit Labs, Inc.'s ("Defendant")

Motion to Dismiss, filed on August 29, 2025.  (Dkts. ## 41; 41-1.)[1]  On October

10, 2025, Plaintiffs Brian Hickerson and Eric Macalpine ("Plaintiffs") filed a

response in opposition.  (Dkt. # 43.)  On October 31, 2025, Defendant filed a reply.

(Dkt. # 44.)  Both parties have filed a notice of supplemental authority.  (Dkts.

## 45, 47.)  The Court finds these matters suitable for disposition without a

hearing.  After careful consideration of the filings and relevant case law, the Court,

for the following reasons, **DENIES** Defendant's Motion to Dismiss (Dkt. # 41.)

---

[1] Defendant attached its memorandum in support as an exhibit to the motion. (Dkt. # 41-1.)

BACKGROUND

This Video Privacy Protection Act ("VPPA") lawsuit arises out of Defendant Onnit Labs Inc.'s ("Onnit") alleged disclosure of its consumers' "personally identifiable information" ("PII") to (i) Meta Platforms, Inc. ("Meta"), formerly known as Facebook, Inc.; (ii) Alphabet, Inc., formerly known as Google ("Google"); (iii) HubSpot, Inc. ("HubSpot"); (iv) Wunderkind Corporation, formerly known as Bounce Exchange ("Bounce Exchange"); and (v) Bazaarvoice Inc. ("Bazaarvoice").  (Dkt. # 35 at 2.)  The alleged PII disclosed to Meta includes both the consumers' Facebook IDs and URLs identifying and containing the specific prerecorded video material they purchased from Defendant.  (Id.)  The alleged PII disclosed to the other vendors includes the consumers' email address and specific prerecorded video material they purchased from Defendant.  (Id. at 2–3.)

Defendant is an Austin-based company that sells fitness products through its website, www.onnit.com (the "Website"), including prerecorded exercise programs.  (Id. at 7, 16–20.)  On November 13, 2023, and February 15, 2023, respectively, Plaintiffs Mr. MacAlpine and Mr. Hickerson allegedly purchased prerecorded video material from Defendant's Website.  (Id. at 3–6.)  Plaintiffs allegedly maintained active Meta (formerly "Facebook") accounts at the time they purchased the prerecorded video material on Defendant's Website.  (Id.)

Plaintiffs allege that Defendant knowingly installed "Meta Pixel" on its Website, which is a "unique string of code that companies can embed on their websites to monitor and track the actions taken by visitors to their websites and to report them back to Meta." (Id. at 24.) The Meta Pixel program allegedly allows companies, like Defendant, to build detailed profiles about their customers and to serve them with highly targeted advertising. (Id.) Plaintiffs allege that whenever a person with a Meta account purchases prerecorded video material from Defendant's Website, Defendant knowingly uses Meta Pixel to disclose to Meta its consumers' Facebook IDs and the names of the videos those consumers purchased. (Id. at 25–27.) As alleged, a Facebook ID is a unique and persistent identifier that allows anyone to look up the user's unique Meta profile and thus identify the user by name. (Id. at 24.)

In their Third Amended Complaint, Plaintiffs added similar allegations regarding Defendant's knowing installation of similar cookies/codes with other third-party vendors that offer similar analytics about their customers to assist in highly targeted advertising. Plaintiffs now allege that Defendant intentionally installed "Google Tag" (Id. at 32–37), "Hubspot Tracking Code" (Id. at 37–41), "BV Pixel" (Id. at 41–45), and "Wunderkind Analytics" (Id. at 45–48). For each of these programs, Plaintiffs include screenshots illustrating the tracking URL with identifying information that is sent to the third-party vendors.

Plaintiffs allege that at all relevant times, Defendant knew that the tracking codes it intentionally installed on its Website was disclosing its customers' "Private Viewing Information" to these third-party vendors.  (Id. at 51–52.) Plaintiffs allege that the Private Viewing Information constitutes "'personally identifiable information' as defined in 18 U.S.C. § 2710(a)(3) because it identified each of the Plaintiffs and Class members to third parties as an individual who purchased, and thus 'requested or obtained,' specific prerecorded video material from Defendant via its Website."  (Id. at 51.)

On August 15, 2024, Plaintiffs filed this class action lawsuit, alleging that Defendant disclosed Plaintiffs' PII to Meta in violation of the Video Privacy Protection Act ("VPPA").[2]  (Dkt. # 1.)  On November 12, 2024, Defendant filed a motion to dismiss.  (Dkt. # 14.) On May 14, 2025, the Court issued an Order Denying Defendant's Motion to Dismiss.  (Dkt. # 26.)  Plaintiffs filed their Third Amended Complaint (the "Complaint"). (Dkt. # 35.)

On August 29, 2025, Defendant filed the current motion to dismiss. (Dkt. # 41.)  On October 10, 2025, Plaintiffs filed a response in opposition.  (Dkt. # 43.)  On October 31, 2025, Defendant filed a reply.  (Dkt. # 44.)  Both parties

_____

[2] This lawsuit originally included Plaintiff Eric Macalpine and Andrew Gremmo.  (Dkt. # 1.)  Plaintiff Brian Hickerson was added October 23, 2024. (Dkt. # 12.)  Plaintiff Andrew Gremmo dismissed his claims on July 29, 2025. (Dkt. # 34.)

have filed a notice of supplemental authority.  (Dkts. ## 45, 47.)  Thus, the motion

is ripe for review.

<u>LEGAL STANDARDS</u>

I.    <u>Rule 12(b)(1)</u>

"Federal courts are courts of limited jurisdiction."  <u>Gunn v. Minton</u>,

568 U.S. 251, 256 (2013).  A federal court properly dismisses a case, or a cause of

action, for lack of subject matter jurisdiction when it lacks the statutory or

constitutional power to adjudicate the case.  <u>Home Builders Ass'n of Miss., Inc. v.</u>

<u>City of Madison</u>, 143 F.3d 1006, 1010 (5th Cir. 1998).  "[T]he burden of proof for

a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."  <u>Ramming</u>

<u>v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied, 536 U.S. 960

(2002).  The court may resolve disputes about its subject matter jurisdiction based

on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts

evidenced in the record; or (3) the complaint supplemented by undisputed facts

plus the court's resolution of disputed fact."  <u>Id.</u>

When a Rule 12(b)(1) motion is filed in conjunction with other

Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack

before addressing any attack on merits.  <u>Hitt v. City of Pasadena</u>, 561 F.2d 06, 608

(5th Cir. 1977).  In examining a Rule 12(b)(1) motion, the court will consider

factual disputes and grant only if the plaintiff cannot prove any set of facts in

support of his claim.  <u>Home Builders Ass'n of Miss.</u>, 143 F.3d at 1010.  A complaint must be stated with enough clarity to enable a court or opposing party to determine whether a claim is sufficiently alleged.  <u>See</u> <u>Elliott v. Foufas</u>, 867 F.2d 877, 880 (5th Cir. 1989).  The complaint will "be construed in a light most favorable to the plaintiff, and the allegations contained therein ae to be taken as true."  <u>Oppenheimer v. Prudential Securities Inc.</u>, 94 F.3d 189, 194 (5th Cir. 1996).

II.    <u>Rule 12(b)(6)</u>

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well–pleaded facts as true, viewing them in the light most favorable to the plaintiff."  <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted).  The Supreme Court has explained that a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Dkt.</u>

The tenet that a court must accept as true all allegations contained in a complaint is inapplicable to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  <u>Iqbal</u>, 556 U.S. at 678

(internal quotations and citations omitted).  Thus, although all reasonable

inferences will be resolved in favor of the plaintiff, the plaintiff must plead

"specific facts, not mere conclusory allegations."  Tuchman v. DSC Commc'ns

Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407

F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations,

unwarranted factual inferences, or legal conclusions.").

       In determining whether a plaintiff's claims survive a Rule 12(b)(6)

motion to dismiss, the factual information to which the Court addresses its inquiry

is limited to the (1) facts set forth in the complaint, (2) documents attached to the

complaint, and (3) matters of which judicial notice may be taken under Federal

Rules of Evidence 201.  Walker v. Beaumont Indep. Sch. Dist., 938 F.3d 724, 735

(5th Cir. 2019).

## DISCUSSION

       In 1988, Congress enacted the Video Privacy Protection Act ("VPPA")

in response to a profile of then-Supreme Court nominee Judge Robert H. Bork that

was published by a Washington, D.C. newspaper during his confirmation hearings.

S. Rep. No. 100–599, at 5 (1988), reprinted in 1988 U.S.C.C.A.N. 4342–1.  The

profile contained a list of 146 films that Judge Bork and his family had rented from

a video store.  Id.  Members of Congress denounced the disclosure as repugnant to

the right of privacy.  Id. at 5–8.  Congress then passed the VPPA "[t]o preserve

personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." Id. at 1.

To effectuate this purpose, Congress in the VPPA created a civil remedy against a "video tape service provider" for "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1).

To state a claim under the VPPA, plaintiff must allege that defendant (1) is a video tape service provider; (2) who knowingly disclosed to any person; (3) personally identifiable information; (4) concerning any consumer. See 18 U.S.C. § 2710(b)(1). A "video tape service provider" is defined as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). "Personally identifiable information" is defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Finally, a "consumer" is defined as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

Defendant moves to dismiss Plaintiffs' Third Amended Complaint for lack of Article III standing and for failure to state a claim for a violation of the

VPPA.  (Dkt. # 41 at 2.)  The Court first considers Defendant's arguments on standing before turning to the question of whether Plaintiffs have stated a claim for which relief can be granted.

I.    Article III Standing

Article III of the Constitution limits the jurisdiction of federal courts to "cases and controversies."  U.S. Const. art. 3, § 2.  "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  To demonstrate standing, a plaintiff must show: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021).  "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)).

Defendant's motion to dismiss pursuant to Rule 12(b)(1) focuses on the first element of standing: the requirement that a plaintiff show she has suffered a concrete injury in fact.  "[C]ertain harms readily qualify as concrete injuries under Article III."  TransUnion, 594 U.S. at 425.  "The most obvious are traditional tangible harms, such as physical harms and monetary harms."  Id.

9

Various intangible harms can also satisfy this requirement, but only if they have a "'close relationship' to harms 'traditionally' recognized as providing a basis for lawsuits in American courts." Id. (quoting Spokeo, 578 U.S. at 340). "Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion." Id.

Defendant makes several arguments to refute Plaintiffs' alleged injury: (1) Congress expressly permitted disclosure of PII to another business for marketing purposes under the VPPA; (2) business-to-business disclosures do not cause concrete harm; (3) Plaintiffs do not have a reasonable expectation of privacy; and (4) no video purchase information was disclosed. (Dkt. # 41-1 at 4–14.)

## A.   Ordinary Course of Business Exception

First, Defendant argues that Congress "expressly exempted any disclosure of personally identifiable information 'to any person if the disclosure is incident to the ordinary course of business of the video tape service provider.'" (Id. at 5) (citing 18 U.S.C. § 2710(b)(2)(E)). The VPPA defines "ordinary course of business" as including "only debt collection activities, order fulfillment, request processing, and the transfer of ownership[.]" § 2710(a)(2). Defendant avers that Congress expressly intended that this exception "allows disclosure to permit video tape service providers to use mailing houses, warehouses, computer services, and similar companies for marketing to their customers. These practices are called

'order fulfillment' and 'request processing.'" (Id.) (citing S. REP. 599, 12, 1988 U.S.C.C.A.N. 4342-1, 4342-10.) Thus, Defendant's sharing of PII for marketing purposes is exempt. (Id.) The Court disagrees.

Defendant cites a 1988 Senate Judiciary Report in support of its argument, but this does not change the plain language of the VPPA, which does *not* "expressly" permit disclosure of PII for marketing purposes. When interpreting a statute, a court should start with the statute's express, plain language and "assume that the ordinary meaning of that language accurately expresses the legislative purpose." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 251 (2010) (quoting Gross v. FBL Financial Services, Inc., 557 U.S. 167, 175 (2009)). Congress provided four terms to define the "ordinary course of business": debt collection activities, order fulfillment, request processing, and the transfer of ownership. § 2710(a)(2). "Marketing" is not included.

Other courts have come to the same conclusion. In Collins v. Toledo Blade, the court rejected the same argument, stating that "Congress already addressed marketing in a separate subsection—Subsection (D). If Congress intended to include 'marketing' in Subsection (E) where it discussed the 'ordinary course of business,' then it would have done so, and perhaps would not have also addressed 'marketing' in its own subsection." 720 F. Supp. 3d 543, 554–55 (N.D. Ohio 2024).

B.   <u>Concrete Harm</u>

The Court addresses Defendant's next two arguments—that business-to-business disclosures do not cause concrete harm and Plaintiffs do not have a reasonable expectation of privacy—concurrently because they both reach the heart of the standing controversy within the VPPA context.  Both parties cite to competing, non-binding case law.  Compare Popa v. Microsoft Corp., 153 F.4th 784 (9th Cir. 2025) (holding that the plaintiff lacks standing for VPPA claim because her harm is not similar to common law privacy torts), and Perez v. McCreary, Veselka, Bragg & Allen, P.C., 45 F.4th 816 (5th Cir. 2022) (holding that the plaintiff has not suffered concrete injury for FDCPA claim), with Pileggi v. Washington Newspaper Publ'g Co., LLC, 146 F.4th 1219 (D.C. Cir. 2025) (finding the plaintiff suffered a concrete injury for VPPA claim by reference to two common law claims), and Salazar v. Paramount Glob., 133 F.4th 642 (6th Cir. 2025), cert. granted, No. 25-459, 2026 WL 189831 (U.S. Jan. 26, 2026) (finding the plaintiff has suffered a concrete injury for VPPA claim by reference to well-established privacy harms), and Salazar v. Nat'l Basketball Ass'n, 118 F.4th 533 (2d Cir. 2024), cert. denied sub nom. NBA v. Salazar, No. 24-994, 2025 WL 3506972 (U.S. Dec. 8, 2025) (finding the plaintiff suffered a concrete injury for VPPA claim by reference to common-law analog).

Most recently, the Honorable Judge Pittman found that a plaintiff in a factually analogous case had established standing for her VPPA claim.  See Cochenour v. 360Training.com, Inc., No. 1:25-cv-00007-RP (W.D. Tex. Nov. 3, 2025) (the plaintiff alleges the defendant, who sold pre-recorded videos to the plaintiff, shared her PII using Meta Pixel).  Thus, while the case law continues to develop, the undersigned finds persuasive and adopts the reasoning of Judge Pittman.

In TransUnion, the Supreme Court identified "disclosure of private information" as "harm[] traditionally recognized as providing a basis for lawsuits in American courts."  594 U.S. at 425.  In considering whether an alleged injury has a close enough relationship with a traditional basis for a lawsuit, the Fifth Circuit has explained:

> [A] plaintiff doesn't need to demonstrate that the level of harm he has suffered would be actionable under a similar, common-law cause of action. But he does need to show that the type of harm he's suffered is similar in kind to a type of harm that the common law has recognized as actionable.

Perez v. McCreary, Veselka, Bragg & Allen, P.C., 45 F.4th 816, 822 (5th Cir. 2022).  "The Fifth Circuit has not held that a plaintiff needs to plead each element of a specific common-law cause of action to satisfy the concreteness requirement."  Cochenour, No. 1:25-cv-00007-RP at *7 (citing Perez, 45 F.4th at 822).  Judge Pittman interpreted Perez as only requiring that the harm be "similar" because

under TransUnion, a single unwanted communication can amount to a concrete injury if prohibited by statute, even where the parallel common law cause of action required multiple unwanted communications.[3]  Id.  Accordingly, Judge Pittman found that "despite the parties' dispute about whether Plaintiff has alleged each element of a Texas common-law claim for publication of private facts, the Court find[s] that Plaintiff has alleged that private information was disclosed, and further that disclosure of private information is a 'type' of harm recognized at common law . . . ."  Id.  The Court agrees with Judge Pittman and the various other courts. Accordingly, the Court finds that Plaintiffs have sufficiently plead concrete injury for their claims to survive the motion to dismiss stage.

C.    Disclosure of Video Purchase

Lastly, Defendant argues that Plaintiffs have not suffered any injury because their Third Amended Complaint includes a screenshot from Defendant's purchase page, before the purchase is actually completed, revealing that Plaintiffs' "metadata appears both *before* and after a website visitor makes a purchase . . . making it logically impossible that *any of* this data can disclose whether someone has in fact purchased a video from Onnit."  (Dkt. # 44 at 8; see also Dkt. # 44-1 at

---

[3] The Court notes that although the Fifth Circuit in Perez ultimately found that the plaintiff lacked standing for her FDCPA claim, the Second Circuit has concluded that the analogy to mail vendor FDCPA cases is "inapt" in this context. Salazar, 118 F.4th at 542–43.

13–14) (citing Dkt. # 27 at ¶ 94.)  The Court understands the Defendant's argument

as such: if that metadata is shown both before and after a customer purchases a

video, "then it's obvious that this data cannot possibly evidence the purchase of a

specific video title[,]" and so Defendant did not share PII, and thus Plaintiffs

suffered no injury.  (Id.)  This argument lacks merit because the VPPA does not

require that the plaintiff make a purchase.  Rather, it prohibits the disclosure of

"information which identifies a person as having *requested or obtained* specific

video materials or services from a video tape service provider."  18 U.S.C.

§ 2710(a)(3) (emphasis added).

    D.   <u>Causation and Redressability</u>

        Although Defendant does not challenge the other standing

requirements, the Court finds that Plaintiffs have satisfied those as well.  (<u>See</u>

<u>generally</u> Dkt. # 41-1.)  The Court finds that Defendant's alleged installation and

transmission of Plaintiffs' PII to Meta, Google, HubSpot, Bounce Exchange, and

Bazaarvoice via tracking pixels caused Plaintiffs' alleged injury and would be

redressed by awarding damages or other relief as provided for in the VPPA.

Accordingly, the Court DENIES Defendant's Rule 12(b)(1) motion to dismiss

Plaintiffs' claims for lack of subject matter jurisdiction.

II.    <u>Failure to State a Claim</u>

Defendant also seek dismissal pursuant to Rule 12(b)(6), arguing that Plaintiffs' allegations reveal that (1) the allegedly disclosed information is not PII under the VPPA; (2) Defendant's alleged disclosure for its marketing purposes fall within the "ordinary course of business" exception; and (3) Defendant's sale of videos available to be streamed does not make Defendant a "video tape service provider" subject to VPPA.  (Dkt. # 41 at 2.)

The Court has already analyzed and denied the second argument regarding the "ordinary course of business" exception.  <u>See</u> discussion <u>supra</u> Section 1.A.  Thus, the Court will only address Defendant's first and third arguments.  While Plaintiffs argue that Defendant may not raise new arguments that were available when Defendant filed its first motion to dismiss (Dkt. # 14), in the interest of caution and to settle any possible dispute, the Court will address the arguments on their merits.

A.    <u>"Personally Identifiable Information" Under The VPPA</u>

Defendant urges the Court to adopt the "ordinary person" VPPA standard that has been adopted by the Second, Ninth, and Third Circuits and find that the allegedly disclosed information is not PII under the VPPA.  (Dkt. # 41-1 at 15) (citing <u>Solomon v. Flipps Media, Inc.</u>, 136 F.4th 41, 46 (2d Cir. 2025).  However, the Court has already addressed this argument when denying

16

Defendant's previous motion to dismiss and stated that, "Even assuming the 'ordinary person' standard applies here, courts have also readily found that a Facebook ID is a 'unique identifier that is enough on its own to identify a person' for purposes of the VPPA."  (Dkt. # 26 at 9) (citing Martinez v. D2C, LLC, No. 23-21394-CIV, 2023 WL 6587308, at *4 (S.D. Fla. Oct. 10, 2023)).  This Court has already held that Plaintiffs have sufficiently alleged their Facebook IDs and the URLs of the video materials they requested or obtained from Defendant constitute PII within the meaning of the VPPA.  (Id. at 10.)  The Court maintains this finding as to Meta.  This holding is consistent with Judge Pittman's decision and that of the Northern District of Texas.  See Cochenour, No. 1:25-cv-00007-RP at *11; Frawley v. Nexstar Media Group Inc., No. 3:23-CV-2197-L, 2024 WL 3798073, at *8 (N.D. Tex. July 22, 2024), R. & R. adopted, No. 3:23-CV-2197-L, 2024 WL 3807700 (N.D. Tex. Aug. 13, 2024)).

Further, although the Court's previous Order only held that the URLS and Facebook IDs constituted PII as to Meta, the Court extends this holding to Plaintiff's newly alleged facts as to Google, HubSpot, Bazaarvoice, and Bounce Exchange.  The Court acknowledges that it previously held that *Facebook IDs* and the customer's URLs constituted PII, whereas Plaintiffs' Third Amended Complaint involving the other vendors only alleges that the Plaintiff's *emails* and the title of the specific video materials were shared, not their Facebook ID.  (See

Dkt. # 35 at 34, 39, 43, 47.)  Defendant argues that the email address

"myhonestreview51@gmail.com," which Plaintiffs used as an example, is

personally *unidentifiable* information.  (Dkt # 41-1 at 16 n.11.)  However, the

Court notes that this email was only for demonstration and could easily include

identifiable information, as many email addresses do, and be linked to the

customer's social accounts, including Meta.  Thus, given the lack of available case

law on the issue and the early stage of this litigation, the Court will extend its

previous holding and find that Plaintiffs have adequately alleged that the sharing of

Plaintiffs' emails to the additional vendors constitutes PII within the meaning of

the VPPA.

       Lastly, Defendant's position is in part premised on the argument that

the metadata within the URLs does not identify "specific video materials" to

qualify as PII under the VPPA because the metadata is incomprehensible to the

ordinary person.  (Dkts. ## 41-1 at 16; 44 at 10.)  In response, Plaintiffs distinguish

the URL metadata at issue here with that found to be unidentifiable in other cases

to urge that "it is certainly plausible that an ordinary person could understand" the

URL as referring to specific video materials.  (Dkt. # 43 at 22) (citing Solomon,

136 F.4th at 54.)  In Frawley, the court's conclusion that the plaintiff had

sufficiently alleged that the defendant disclosed specific video content was in part

based on the finding that "courts have found that '[w]hether a URL sufficiently

identifies a video is ultimately a factual question that should not be resolved on motion to dismiss.'"  2024 WL 3798073 at *7 (citing <u>Ghanaat v. Numerade Labs, Inc.</u>, 689 F. Supp. 3d 714, 721 (N.D. Cal. 2023)).  The Court agrees.  Plaintiffs have sufficiently alleged that Defendant disclosed specific video content at this stage in the pleadings.

   B.   <u>"Video Tape Service Provider" Under The VPPA</u>

Lastly, Defendant argues that it is not a "video tape service provider" ("VTSP") under the VPPA.  (Dkt. # 41-1 at 17–21.)  Defendant urges the Court to decline to extend the definition of a VTSP, as other district courts have done, to include video streaming providers.  (<u>Id.</u>)

A "video tape service provider" is anyone "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials . . . ."  18 U.S.C. § 2710(a)(4).  Defendant argues that "similar audio visual materials" means "audio-visual content stored on a *physical medium*," not including streaming.  (<u>Id.</u> at 18–19.)  In support, Defendant points out that Congress has yes to extend the VPPA to cable television and declined to extend the VPPA definition of PII to include IP addresses.  (<u>Id.</u> at 19–21.)

However, the existing case law on this issue does not support Defendant's position and Defendant fails to point to any relevant case law to the contrary.  <u>See</u> <u>In re Facebook, Inc., Consumer Priv. User Profile Litig.</u>, 402 F.

Supp. 3d 767, 798–99 (N.D. Cal. 2019) (finding that Facebook is a VTSP because it regularly delivers video content to users); <u>Stark v. Patreon, Inc.</u>, 635 F. Supp. 3d 841, 851–853 (N.D. Cal. 2022) (holding that a "a video must be prerecorded to fall within the VPPA's definition of 'similar audio visual materials'" and holding in dicta that a content creator platform is in the business of delivering video content); <u>In re Hulu Priv. Litig.</u>, No. C 11-03764 LB, 2012 WL 3282960, at *4–6 (N.D. Cal. Aug. 10, 2012) (extending definition of "similar audio visual materials" to include streaming services); <u>Jackson v. Fandom, Inc.</u>, No. 22-CV-04423-JST, 2023 WL 4670285, at *3 (N.D. Cal. July 20, 2023) (finding that website that provided prerecorded streaming video content is a VTSP); <u>Ghanaat</u>, 689 F. Supp. 3d at 719–20 (same).

        The Court recognizes these cases are not binding.  However, the Court once again turns to the guidance of the Honorable Judge Pittman who found that the plaintiff has sufficiently plead that the defendant, who sells pre-recorded educational videos, is a VTSP within the meaning of the VPPA.  <u>Cochenour</u>, No. 1:25-cv-00007-RP at *8–9.  Judge Pittman focused more on what it means to be "engaged in the business" of the rental, sale or delivery of audio visual materials, whereas Defendant's argument is premised more on reinterpreting "similar audio visual materials."  Regardless, the bottom line is that Defendant asks this Court to stray from the existing case law on the subject and contradict the finding of Judge

Pittman in a closely analogous recent case.  Until such time, if any, that the Fifth Circuit elects to weigh in on the issue, this Court declines to do so.  Accordingly, the Court finds that, at this stage, Plaintiffs have met their burden of pleading that Defendant is a VTSP within the meaning of the VPPA.

CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion to Dismiss (Dkt. # 41) under Rules 12(b)(1) and 12(b)(6).

**IT IS SO ORDERED**.

**DATED:** Austin, Texas, February 4, 2026.


_____
David Alan Ezra
Senior United States District Judge